William LaBIER, personally and
as father and next friend of
Joseph M. LaBier, et al.

v.

Monique PELLETIER, formerly known
as Monique Chamberlain.

Supreme Judicial Court of Maine.

Argued June 23, 1995.
Decided Oct. 10, 1995.

Paul F. Macri (orally), Berman & Simmons, P.A., Lewiston, for Plaintiff.

Catherine R. Connors (orally), Pierce Atwood Scribner Allen Smith & Lancaster, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

ROBERTS, Justice.

William LaBier, personally and as the father and next friend of Joseph M. LaBier, appeals from a judgment entered on a jury verdict in the Superior Court (York County, *Fritzsche, J.*) in favor of Monique Pelletier. Joseph was injured when the bicycle he was riding was hit by a car driven by Pelletier. LaBier argues that the court erred in instructing the jury that the negligence of Nyla LaBier, Joseph's mother, should be imputed to her son in assessing comparative fault. Because we reject the doctrine of imputed parental negligence in these circumstances, we vacate the judgment.

On October 14, 1987, Nyla LaBier went for a walk with her infant daughter on Walker

Ridge Drive in Sanford. Joseph, who was four years and eight months old, accompanied them on his bicycle. The LaBiers stopped at the home of their neighbor, Beth St. Cyr. While Nyla talked to St. Cyr at the top of the St. Cyrs' steeply sloping driveway, Joseph rode loops on his bicycle across the lawn, down the driveway, and back to the top. On one of his trips down the driveway, Joseph's feet slipped off the pedals of his bike and he lost control.

Meanwhile, Pelletier was driving on Walker Ridge Drive toward the St. Cyr house, which was on her left. Her daughter was in the back seat of her vehicle. As she approached the St. Cyr house she noticed several children playing at the home of the Gudaitis family, which was on her right before she reached the St. Cyr driveway. She estimated her speed at 20 to 25 m.p.h., which was within the legal limit for that residential neighborhood. She slowed her car as she spotted the Gudaitis children, pointing out to her daughter a young girl on a swing set. After concluding that none of the Gudaitis children were likely to stray into the street, Pelletier began to accelerate.

The right front fender and hood of Pelletier's vehicle struck Joseph at a point about three-quarters of the way across the street. Pelletier failed to see Joseph approaching the street even though her view of the St. Cyr driveway was unobstructed. Joseph suffered a broken leg and a head injury, as well as numerous scrapes and bruises.

LaBier sued Pelletier on behalf of Joseph, claiming that her negligence caused Joseph's injuries. Pelletier alleged the comparative negligence of Joseph and Nyla as an affirmative defense, and brought a counterclaim against Nyla for contribution, alleging that Nyla's failure to properly supervise Joseph caused the accident. At trial, the court instructed the jury, over LaBier's objection, to consider both Nyla's negligence and Joseph's negligence, and to return a verdict in favor of Joseph only if it found that the combined causative negligence of Joseph and Nyla was less than the causative negligence of Pelletier. The jury found that Joseph was not negligent; that both Nyla and Pelletier were negligent; and that Nyla's negligence was greater than Pelletier's. It therefore awarded no damages to Joseph. The court entered a judgment on the verdict and dismissed Pelletier's counterclaim against Nyla as moot. LaBier's appeal followed.

Although we have stated that the negligence of a parent may be imputed to a child, the parties cite no case, and we find none, in which we have relied exclusively on the doctrine of imputed parental negligence to bar recovery for a child. See, e.g., Orr v. First Nat'l Stores, Inc., 280 A.2d 785, 796 (Me. 1971); Day v. Cunningham, 125 Me. 328, 332, 133 A. 855, 857 (1926); cf. Leslie v. City of Lewiston, 62 Me. 468 (1873) (failure of father to provide a safe way alternative ground of decision). The instant case squarely presents for the first time the question whether the doctrine of imputed parental negligence is or ought to be the law of Maine. See DONALD A. ZILLMAN ET AL., MAINE TORT LAW § 17.02 n. 40 (1994) ("Whether the doctrine of imputation of parental negligence remains good law in Maine is an open question.") (hereinafter ZILLMAN).

■ As the facts of this case demonstrate, the doctrine of imputed parental negligence may deprive an innocent child of a remedy for his injuries. Modern authorities recognize that it is fundamentally unfair to deprive an injured child of a remedy because of actions by the parent that the child is unable to control. As the Supreme Court of Montana recognized over eighty years ago:

> [T]he negligence of the parent, guardian, or custodian is not imputable to the child, because it is in no way responsible for the danger, had no volition in establishing the relation of privity with the person whose negligence it is sought to impute to it, and should not be charged with the fault of such person in allowing it to be exposed to danger which it had not the capacity either to know or to avoid.

Flaherty v. Butte Elec. R.R., 40 Mont. 454, 107 P. 416, 418 (1910) (citations omitted). See also Annotation, Imputing Negligence of Parent or Custodian to Child in Action By or on Behalf of Child for Personal Injury, 15 A.L.R. 414, 418 (1921). The unfairness of imputed parental negligence is amplified by

the fact that in cases like this one the doctrine enables an admittedly blameworthy party to escape liability. Because the policies that support the doctrine, even if valid, fail to justify the unfair result that the doctrine produces, we reject the doctrine of imputed parental negligence. Instead, we adopt the approach of the RESTATEMENT, which provides that "[a] child who suffers physical harm is not barred from recovery by the negligence of his parent, either in the parent's custody of the child or otherwise." RESTATEMENT (SECOND) OF TORTS § 488 (1965).

Pelletier argues that the doctrine of imputed parental negligence grows from the theory of unity between parent and child, similar to the common law fiction of legal unity between husband and wife. Pelletier maintains that the parent is therefore the agent of the child. She relies on *Merchant v. Mansir*, 572 A.2d 493 (Me.1990), which adopts RESTATEMENT (SECOND) OF TORTS § 316 (1965), to support her argument that "the parent is the child, and the child the parent in terms of facing both liability and harm vis-á-vis the outside world."

We disagree. In *Black v. Solmitz*, 409 A.2d 634, 635 (Me.1979), we held for the first time that children may sue their parents. In so doing, we put to rest any possibility that parent and child might be one legal entity. We realized that the common law recognized "no conception of any unity of parent and minor child comparable to the conception of unity of husband and wife." *Id.* at 637. Contrary to Pelletier's contention, "the common law ... never has made the parent vicariously liable as such for the conduct of the child." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 123, at 913 (5th ed. 1984) (hereinafter PROSSER). Indeed, PROSSER refers to the supposed agency of the parent to look after the child as "the sheerest nonsense." *Id.* § 74, at 532.

Pelletier's reliance on *Merchant* and RESTATEMENT (SECOND) OF TORTS § 316 is misplaced. In *Merchant,* we did *not* hold that parents are liable for the torts of their children, as Pelletier suggests. We stated that parents may be liable in limited circumstances to third persons who are injured as a result of a breach of a duty of supervision, citing RESTATEMENT (SECOND) OF TORTS § 316. *Merchant,* 572 A.2d at 494. Moreover, the RESTATEMENT specifically rejects Pelletier's contention that the parent and child are a single entity for comparative negligence purposes, noting that "[t]he family relation between the parent and child does not so identify the two as to make the parent's negligence a bar to the child's recovery or child's negligence a bar to the parent's recovery." RESTATEMENT (SECOND) OF TORTS § 488, cmt. a (1965).

Pelletier also argues that imputed parental negligence is necessary to prevent parents from reaping a windfall from their own negligence. Although Pelletier's windfall argument may once have had some validity, modern legal developments have rendered it anachronistic. Historically, the nonparental defendant was unable to seek contribution from a joint tortfeasor who was the plaintiff's parent because a defendant could seek contribution only from a party against whom the plaintiff had a cause of action. Because parents were immune from suit by their children in many jurisdictions, that rule effectively prevented nonparental negligent parties from seeking contribution. *See* P.H. Vartanian, Annotation, *Right of Tortfeasor to Contribution Where Judgment Creditor is Spouse, Parent, Child, etc., of Other Tortfeasor Against Whom Contribution is Sought,* 19 A.L.R.2d 1003, 1003–04 (1951).

That historical justification for the doctrine of imputed parental negligence has been absent in Maine at least since *Bedell v. Reagan,* 159 Me. 292, 192 A.2d 24 (1963). In that case, we held that the existence of interspousal immunity would not prevent a third-party claim for contribution against a negligent spouse although that spouse was then immune from suit by the injured spouse. *Id.* at 298, 192 A.2d at 27. Presumably the same analysis was applicable to a third-party claim against a negligent parent who was then immune from suit by a child. The abrogation of parental immunity in *Black,* however, combined with modern third-party practice eliminated any potential unfairness to the nonparental defendant. ZILLMAN § 17.02 n. 40 ("A fair accommodation among the parties

is better achieved by third-party contribution claims against the parent."). Accordingly, Pelletier's counterclaim for contribution must be reinstated, and in that context the comparison of the negligence of Pelletier to that of Nyla properly placed before the jury.

 Moreover, Pelletier's argument that any tort recovery by a minor child will relieve the parent's obligation to provide for the child is inaccurate. The common law imposes a duty on parents to support their children. *See Pendexter v. Pendexter*, 363 A.2d 743, 750 (Me.1976) (Dufresne, C.J., concurring for a majority). The existence of the child's own income or property does not relieve the parent of that duty. *See* 59 Am. Jur.2d *Parent and Child* § 64 (1987). In an appropriate case the court may restrict the application of the proceeds of suit for the protection of a minor plaintiff. *See* M.R.Civ.P. 17A(c), (d).

Even if the parent might realize some incidental benefit from the child's recovery, it is unfair to remedy that problem by shifting the windfall to the nonparental tortfeasor, thereby stripping the innocent child of any recovery against a negligent nonparental defendant. *See* Armand Raiziss–Conn, Note, *Some Aspects of "Imputed" Negligence*, 80 U.Pa.L.Rev. 1123, 1131 (1932) (a child should not be deprived of a remedy merely because a negligent parent may indirectly benefit as a result).

 Finally, Pelletier contends that a change in a long-standing principle of tort law must be left to the Legislature. "It is fundamental that the rules of common law which are court-made rules can be changed by the court when it becomes convinced that the policies upon which they are based have lost their validity or were mistakenly conceived." *Pendexter*, 363 A.2d at 749. "When principles fail to produce just results, [we have] found a departure from precedent necessary to fulfill [our] role of reasoned decision making." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 935 (Me.1982). Assuming that the doctrine of imputing a parent's negligence to the child has been a long-standing principle of Maine tort law, it has outlived whatever limited usefulness it might once have had.

Our decision today adopts the modern view that unanimously rejects the doctrine of imputed parental negligence as "not only unsound, but absurd and inhuman." *Denver City Tramway v. Brown*, 57 Colo. 484, 143 P. 364, 368 (1914). According to PROSSER:

[T]his barbarous rule, which denied to the innocent victim of the negligence of two parties any recovery against either, and visited the sins of the fathers upon the children, was accepted in several American States until it was at one time very nearly the prevailing rule; but it now is abrogated, by statute or by decision everywhere except in Maine, where it should be hoped that it will not long survive.

PROSSER § 74, at 531–32.

Because the trial court in this case instructed the jury to impute the negligence of Nyla to Joseph in determining whether Joseph was entitled to recovery against Pelletier, we must vacate the judgment in favor of Pelletier.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.