■ Roger D. Turcsik et al., Respondents, v Guthrie Clinic, Ltd., et al., Appellants, et al., Defendants. [784 NYS2d 721]—

Cardona, P.J. Appeal from a judgment of the Supreme Court (Relihan, Jr., J.), entered July 29, 2003 in Tompkins County, upon a verdict rendered in favor of plaintiffs.

After being diagnosed with severe aortic regurgitation, plaintiff Roger D. Turcsik (hereinafter plaintiff) was admitted to defendant Robert Packer Hospital for a cardiac catheterization. On January 18, 1995, the procedure was performed by plaintiff's treating physician, defendant John L. Wanamaker, a cardiologist with a specialty in invasive cardiology. The hospital chart indicates that Wanamaker was assisted by Faraidoon Daniel Golyan, a first-year fellow in cardiology, employed by the hospital. In order for a cardiac catheterization to be performed, a "cutdown" procedure is required to extract an artery or vein from the arm of the patient to feed a catheter through the vessel to reach the inside chambers of the heart. Neither Wanamaker nor Golyan remembered who made the incisions during the cutdown procedure and the hospital records were insufficient to resolve that issue. The records indicate that there was difficulty locating the preferred vein in plaintiff's right arm. Plaintiff, who was awake, testified that, at one point, he felt a shock-like sensation in his right arm, causing him to cry out. He stated that he received one or two more shocks, and heard Wanamaker say, "You have gone too far. Pull it out and do it over. Do it again." Ultimately, one of the physicians went to the left arm to complete the cutdown.

Following the completion of the catheterization, plaintiff complained that his right hand and arm were numb. Although Wanamaker indicated that the problem should resolve in a few days, plaintiff was ultimately referred to a neurologist, Paul Buckthal. Buckthal opined, after performing a nerve conduction study, that plaintiff "would appear to have an incomplete right median neuropathy at the elbow with mixed conduction and axonal damage. The presence of axonal damage suggests the recovery will be prolonged and possibly incomplete." Buckthal also indicated that the study was "[c]onsistent with an acute and chronic lesion of the right median nerve at or about the

right elbow." Plaintiff's condition did not improve and he was unable to return to his former employment as a welder.

In 1997, plaintiff and his wife, derivatively, commenced this medical malpractice action against the hospital, Wanamaker and defendant Guthrie Clinic, Ltd., a professional medical corporation of which Wanamaker was an employee and shareholder.* In the complaint, plaintiffs alleged that the attempted insertion of the catheter into plaintiff's right arm was negligently performed and not in accordance with acceptable standards of medical care, skill and diligence and that, as a result of said negligence and medical malpractice, plaintiff sustained permanent injuries.

A trial was held and, at the close of plaintiffs' case, the action against the hospital was dismissed. Wanamaker and Guthrie (hereinafter collectively referred to as defendants) also moved to dismiss the complaint against them at the close of plaintiffs' case. Prior to the case going to the jury, however, the motions were denied. Thereafter, the jury returned a verdict against defendants in the amount of $528,529. Defendants moved to set aside that verdict on the ground that it was against the weight of the evidence. Supreme Court denied the motion and, after reducing the jury's award pursuant to CPLR 4545 (a), entered judgment against defendants in the amount of $374,766, prompting this appeal.

Initially, defendants contend that, in the absence of a separate claim for negligent supervision, Wanamaker cannot be held liable, as a matter of law, for any alleged malpractice because plaintiffs failed to establish whether it was Wanamaker or Golyan who performed the aborted procedure on plaintiff's right arm. We are not persuaded since the doctrine of "[v]icarious liability applies to . . . physicians" (*Kavanaugh v Nussbaum*, 71 NY2d 535, 546 [1988]). Vicarious liability will be imposed when a legal relationship, such as master and servant, exists between two treating physicians in the treatment of a patient, thereby rendering the supervising physician liable for the negligence of the other physician when the supervising physician exercised some degree of actual control over the other physician (*see id.* at 547; *Taylor-Gove v St. Joseph's Hosp. Health Ctr.*, 242 AD2d 879, 880 [1997], *lv denied* 91 NY2d 805 [1998]).

Wanamaker testified that, at the time of plaintiff's surgery, he had supervisory responsibility over Golyan, since Golyan was a

---

* We note that the complaint originally also named "John Doe" as a defendant and such individual was later determined to be Golyan. However, Golyan was never officially served or named as a party and no verdict was rendered against him.

first-year fellow assigned to Wanamaker as part of Golyan's rotations within his fellowship program. Specifically, Wanamaker testified that he made all decisions regarding the extent of Golyan's participation in the surgery and controlled and directed Golyan's actions. Thus, Wanamaker had "control in fact" (*Kavanaugh v Nussbaum, supra* at 547) and was acting as master over Golyan in controlling all of Golyan's actions during the surgery regardless of the fact that Golyan was technically employed by the hospital. Accordingly, any question as to which physician actually physically committed the claimed malpractice is irrelevant as to Wanamaker's liability since Wanamaker must be held liable for his own direct negligence and would be vicariously liable for any negligence of Golyan (*see id.* at 547; *see generally Taylor-Gove v St. Joseph's Hosp. Health Ctr., supra* at 880).

We further do not agree with defendants' contention that Supreme Court erred in denying their motions to dismiss, as a matter of law, because plaintiffs failed to present a prima facie case of medical malpractice. For medical malpractice to be established, a "plaintiff [is] required to show that [the defendants] 'deviated or departed from acceptable medical practice *and* that such departure was a proximate cause of injury or damage' " (*Postlethwaite v United Health Servs. Hosps.*, 5 AD3d 892, 895 [2004], quoting *Giambona v Stein*, 265 AD2d 775, 776 [1999]). When attempting to establish a prima facie case based on circumstantial evidence, " '[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant[s] and the causation of the accident by that negligence may be reasonably inferred' " (*Schneider v Kings Highway Hosp. Ctr.*, 67 NY2d 743, 744 [1986], quoting *Ingersoll v Liberty Bank*, 278 NY 1, 7 [1938]). Notably, a plaintiff is not required to eliminate all other possible causes of the injury in order to establish a prima facie case (*see Villa v City of New York*, 148 AD2d 699, 701 [1989]).

Here, plaintiffs' expert, Christina Paylan, a medical doctor and chief surgical resident at a Connecticut hospital, testified that she was familiar with the acceptable standard of care in performing cutdowns in 1995 and, since participating in a surgical internship in general surgery beginning in 1994, she had performed over 1,600 cutdown procedures. Paylan testified that, after reviewing the medical records of plaintiff and the nerve conduction study, she was of the opinion, to a reasonable degree of medical certainty, that plaintiff sustained an injury to his median nerve causing permanent loss of sensory function. Paylan opined that the damage to plaintiff's median nerve was

caused by either a sharp instrument, such as a scalpel or scissors, cutting the nerve or by blunt tipped forceps squeezing the nerve. Furthermore, Paylan stated that the cutting or tension compression of the median nerve during a brachial artery cutdown was a deviation from the acceptable standard of care in cutdown procedures in 1995 and that such damage was "not at all an expected outcome of [a cutdown procedure]."

Although defendants contend that Paylan erroneously failed to specify how or when the injury to plaintiff's median nerve occurred, "[p]laintiff was not required to prove the precise nature of defendant[s'] negligence" (*Coluzzi v Korn*, 209 AD2d 951, 952 [1994], *lv denied* 85 NY2d 801 [1995]), given the insufficiency of the surgical records and notations related to plaintiff's surgery therein, including the absence of a list of the instruments used during the surgery (*see Villa v City of New York*, *supra* at 700-701). Additionally, Paylan opined that the injury could have been caused by either a sharp or blunt instrument as the negligent use of either would cause the same resulting injury to plaintiff's median nerve. Therefore, the lack of exact specificity as to how and when the injury occurred does not undermine plaintiffs' prima facie case because, under the circumstances herein, " '[i]t is enough that [the expert] offer sufficient evidence from which reasonable [people] might conclude that it is more probable then not that the injury was caused by the defendant' " (*Villa v City of New York*, *supra* at 701, quoting *Mertsaris v 73rd Corp.*, 105 AD2d 67, 83 [1984]).

The remaining issues raised by defendants have been examined and found to be unpersuasive.

Mercure, Spain, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed, with costs.