■ SHANNON VAUGHAN, as Parent and Guardian of RONALD BAKER, an Infant, Respondent, v SAINT FRANCIS HOSPITAL, Defendant and Third-Party Plaintiff-Appellant, et al., Defendants. EMERGENCY TREATMENT ASSOCIATES et al., Third-Party Defendants-Appellants. [815 NYS2d 307]—

Lahtinen, J. Appeals (1) from an order of the Supreme Court (Spargo, J.), entered January 24, 2005 in Ulster County, which partially granted plaintiff's motion to, inter alia, dismiss certain affirmative defenses of defendant Saint Francis Hospital, and (2) from an order of said court, entered October 24, 2005 in Ulster County, which, inter alia, upon reconsideration, precluded defendants and third-party defendants from offering certain evidence.

Plaintiff brought her 26-month-old son to the emergency room at defendant Saint Francis Hospital (hereinafter the hospital) in the early afternoon of April 9, 1998. The child was triaged by the screening nurse as a category 2 (out of 3 categories), presenting symptoms of vomiting, fever and slight listlessness. A physician's assistant, third-party defendant Olga Rodriguez, examined the child, whose initial temperature was 103.4, rose to 104 and, after receiving Tylenol and Advil, reportedly dropped to 101.4. Plaintiff allegedly told Rodriguez that she had recently experienced similar symptoms. Rodriguez diagnosed the child as suffering from a "viral syndrome" and, although the hospital's

guidelines ostensibly required a patient triaged as category 2 to be coevaluated by a physician, the child was discharged without being seen by a physician. The discharge directions included "[r]eturn for increased fever, vomiting," "[i]f symptoms worsen, return immediately," and that the child be seen by his pediatrician the next morning.

Plaintiff did not take the child to the pediatrician the following day. The child next received medical care when he was brought back to the emergency room at the hospital in the early morning hours of April 12, 1998. Symptoms at that time included fever, vomiting and seizures. The child was examined by a physician, third-party defendant Louis Mendoza, and, after some alleged delay, was transferred to Westchester Medical Center. The child was diagnosed with bacterial meningitis, which caused him to suffer various asserted severe injuries, including brain damage, spastic quadriparesis and cortical blindness.

In January 2003, plaintiff, acting on the child's behalf, commenced this medical malpractice action against the hospital and various John Does and Jane Does. The hospital's answer included as a first affirmative defense a standard allegation that any damages should be diminished by plaintiff's culpable conduct pursuant to CPLR articles 14 and 14-A. Plaintiff moved to, among other things, dismiss the first affirmative defense as well as to preclude any evidence regarding "parental negligence and redact[ ] any references to parental negligence from any documents," including not permitting the hospital's emergency room discharge instructions into evidence. The hospital withdrew the first affirmative defense to the extent that it applied to conduct by the child, but otherwise opposed the motion. It argued that the discharge instructions were vital to its defense, which was premised in part upon the assertion that the appropriate standard of care included discharging the child with such instructions as were provided.

While the motion was pending, the hospital commenced a third-party action against Emergency Treatment Associates, a corporation that provided emergency room services at the hospital, and various individuals including Rodriguez and Mendoza. The third-party defendants essentially adopted the hospital's position regarding plaintiff's pending motion. Supreme Court, among other things, granted that part of the motion seeking to preclude all evidence of parental negligence, but denied, without prejudice, the request to preclude the hospital's discharge instructions since the bill of particulars contained a contention that inadequate discharge instructions

was one of the claimed grounds of negligent conduct by the hospital.

Thereafter, plaintiff withdrew the allegation of inadequate discharge instructions from her bill of particulars and moved to renew her motion to preclude the hospital's discharge instructions as well as any evidence regarding the instructions. Supreme Court, among other things, granted renewal and held that "defendants and third-party defendants are precluded from offering the April 9, 1998 discharge instructions into evidence or in any way referring to such instructions at trial." The hospital and third-party defendants appeal from both orders.

We consider first plaintiff's contention that the orders are not appealable. "[A]n order which merely limits the admissibility of evidence, even when made in advance of trial on motion papers, constitutes, at best, an advisory opinion which is neither appealable as of right nor by permission" (*Strait v Ogden Med. Ctr.*, 246 AD2d 12, 14 [1998] [internal quotation marks and citations omitted]; *see Ferrara v Kearney*, 285 AD2d 890, 890 [2001]; *Brennan v Mabey's Moving & Stor.*, 226 AD2d 938, 938 [1996]). However, an order that limits the scope of issues to be tried, affecting the merits of the controversy or the substantial rights of a party, is appealable (*see Brown v State of New York*, 250 AD2d 314, 320-321 [1998]; *see also Scalp & Blade v Advest, Inc.*, 309 AD2d 219, 223-224 [2003]; *Rondout Elec. v Dover Union Free School Dist.*, 304 AD2d 808, 810-811 [2003]). Here, Supreme Court cast a broad blanket precluding the hospital from offering its own discharge instructions as well as any evidence about whether those instructions were followed. This significantly undercuts the primary theory of the hospital, i.e., that discharging the child with specific instructions to the parent fell within the acceptable standard of care. Such a ruling has a clear potential of impacting the merits and it affects a substantial right of the hospital. Indeed, in light of the opinions of plaintiff's experts, such a ruling was essentially tantamount to summary judgment for plaintiff on the issue of liability. Accordingly, we conclude that the appeals are properly before us.

Next, we turn to the argument of the hospital and third-party defendants that Supreme Court erred in its application of General Obligations Law § 3-111. That statute provides that "[i]n an action brought by an infant to recover damages for personal injury the contributory negligence of the infant's parent or other custodian shall not be imputed to the infant." (General Obligations Law § 3-111.) Originally enacted in 1935 as part of the Domestic Relations Law, the statute served as a "legislative nullification of early decisions which allowed a jury to consider

a defense in bar of contributory negligence on the part of a plaintiff child by imputing to the child the negligence of the parent in failing to provide reasonable supervision" (*Holodook v Spencer*, 36 NY2d 35, 48 [1974]). The so-called doctrine of imputed negligence, which once had considerable support, has now been nearly universally rejected (*see generally LaBier v Pelletier*, 665 A2d 1013, 1016 [Me 1995]; Restatement [Second] of Torts § 488).*

Precluding a parent's negligence from being imputed to his or her child does not, however, expand the scope of a defendant's duty to the child (*see Bullis v Schuyler Hgts.*, 276 App Div 630, 631-632 [1950], *affd* 302 NY 722 [1951]; *Anderson v State of New York*, 48 Misc 2d 1061, 1070-1071 [1966]). In such regard, alleged acts or omissions of a parent may, in some circumstances, be relevant to present a coherent and complete case to the jury on whether a breach of duty by defendant occurred (*see Akins v Sonoma County*, 67 Cal 2d 185, 198, 430 P2d 57, 64 [1967]; 57B Am Jur 2d, Negligence § 1149). The analysis regarding the initial question of whether negligence (or malpractice) occurred remains unaltered by General Obligations Law § 3-111 in that the fundamental elements—i.e., a breach of duty that is a proximate cause of injuries—must be shown (*see generally Galvin v Cosico*, 90 AD2d 656, 656 [1982], *appeal dismissed* 58 NY2d 1115 [1983]). What a defendant cannot do (if found to have breached a duty that was a proximate cause of a child's injuries) is attempt to use a parent's negligence to reduce the child's damages. Indeed, the Pattern Jury Instructions provide specific guidance on this point, stating: "If you find that plaintiff is entitled to recover under the rules of law I have given you, the sum you award as damages should not be reduced, even if you also find that there was negligence on the part of plaintiff's [parent] which contributed to plaintiff's injury" (PJI3d 2:262 [2006]).

Here, plaintiff is pursuing a medical malpractice action. To establish her cause of action, plaintiff must demonstrate that the hospital deviated from acceptable medical practice and that

---

* The fact that a parent's conduct cannot be imputed to the child does not necessarily shield the parent from liability (*see Holodook v Spencer, supra* at 48). Significantly, however, when the conduct falls within the broad scope of parental supervision, an intrafamily claim is not permitted and, hence, an attempt to cast a portion of culpability upon the parent for a failure of parental supervision is generally not permitted (*see generally LaTorre v Genesee Mgt.*, 90 NY2d 576, 579 [1997]; Siegel, NY Prac § 175 [4th ed]). Here, the hospital acknowledged in its brief and at oral argument that it is not seeking an apportionment of liability with the parents (*see Fontanez v Libra 730 Co.*, 256 AD2d 125, 125 [1998]; *but cf. Cantave v Peterson*, 266 AD2d 492, 493 [1999]).

such act was a proximate cause of the child's injury (*see Turcsik v Guthrie Clinic, Ltd.*, 12 AD3d 883, 886 [2004]; *Rossi v Arnot Ogden Med. Ctr.*, 268 AD2d 916, 917 [2000], *lv denied* 95 NY2d 751 [2000]). Plaintiff has indicated that her experts will testify that discharging the child under the prevailing circumstances was a departure from the accepted standard of care. The responses to various disclosure demands also reflect that her experts may assert errors by the hospital in failing to follow up regarding the condition of the child after his initial visit to the hospital. The hospital, however, set forth in its papers that its expert will testify that the standard of care was satisfied by discharging the child with specific instructions to the parent to follow up the next day with the child's pediatrician and to return to the emergency room if the child developed new symptoms or his condition worsened. Precluding the hospital's discharge instructions from evidence prevents the hospital from attempting to show that it satisfied the standard of care that its expert will testify applies. Supreme Court's ruling had the effect of potentially expanding the hospital's duty and judicially deciding issues within the province of a jury. This result is not required by General Obligations Law § 3-111.

Mercure, J.P., Spain and Mugglin, JJ., concur. Ordered that the order entered January 24, 2005 is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion to preclude all evidence of purported negligent conduct by plaintiff; motion denied to that extent; and, as so modified, affirmed. Ordered that the order entered October 24, 2005 is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion to preclude from evidence the hospital's discharge instructions and any reference thereto; motion denied to that extent; and, as so modified, affirmed.