■ TAYLOR ROSS, Respondent, et al., Plaintiff, v EDGAR MANDEVILLE, Appellant, et al., Defendant. [846 NYS2d 276]—

In an action to recover damages for medical malpractice, etc., the defendant Edgar Mandeville appeals from (1) an order of the Supreme Court, Queens County (Weiss, J.), dated October 27, 2005, which denied his motion pursuant to CPLR 4404 (a) to set aside the jury verdict on the issue of liability and for judgment as a matter of law, or alternatively, to set aside the jury verdict on the issue of liability as against the weight of the evidence and for a new trial, or alternatively, to reduce the damages for past pain and suffering and future pain and suffering as excessive, and (2) a judgment of the same court entered April 3, 2006, which, inter alia, upon the jury verdict awarding damages to the infant plaintiff, Taylor Ross, in the principal sums of $200,000 for past pain and suffering and $350,000 for future pain and suffering over a period of 77 years, is in favor of the plaintiff Taylor Ross and against him.

Ordered that the appeal from the order is dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is modified, on the facts and in

the exercise of discretion, by deleting the provisions thereof awarding damages in the principal sums of $200,000 for past pain and suffering and $350,000 for future pain and suffering, and granting a new trial with respect thereto; as so modified, the judgment is affirmed, with costs to the defendant Edgar Mandeville, unless within 30 days after service upon the plaintiff Dionne Hubbard, as guardian of Taylor Ross, of a copy of this decision and order, the plaintiff Dionne Hubbard, as guardian of Taylor Ross, shall serve and file in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to reduce the verdict as to damages for past pain and suffering from the sum of $200,000 to the sum of $45,000, and for future pain and suffering from the sum of $350,000 to the sum of $80,000; in the event that the plaintiff Dionne Hubbard, as guardian of Taylor Ross, so stipulates, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho,* 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

The evidence at trial showed that on September 25, 2001, the plaintiff Dionne Hubbard, who was pregnant with her daughter Taylor, went into labor. Hubbard was rushed to the defendant New York Hospital Medical Center of Queens (hereinafter the Hospital), where she was connected to a fetal heart monitor, which indicated that Taylor had an abnormally high fetal heart rate. Hubbard also underwent a pelvic examination, which indicated that a prolonged delivery was expected. Based on this information, the defendant Edgar Mandeville, who was Hubbard's private physician, determined that a Caesarian section (hereinafter C-Section) was necessary.

Hubbard was then taken to the operating room, where, after several attempts to administer an epidural proved unsuccessful, she was placed under general anesthesia. This turned what was described as an "urgent" C-section into an "emergency."

After the initial incision was made, Mandeville allowed a third-year resident who was employed by the Hospital to make the incision across Hubbard's uterus. In making that incision, the resident lacerated Taylor's forehead. After Taylor was delivered, a plastic surgeon sutured her laceration. At the time of the trial, Taylor, who was three years old, had a scar.

Contrary to Mandeville's contention, the jury's determination

that he was liable for Taylor's injuries is supported by legally sufficient evidence. The evidence provided a rational basis for the jury's findings that the resident was under Mandeville's "direct supervision" when she cut Hubbard's uterus, that she departed from good and accepted medical practice in cutting Hubbard's uterus, and that such departure was a proximate cause of Taylor's injuries (*see Cohen v Hallmark Cards*, 45 NY2d 493 [1978]). Furthermore, the jury's determination was based on a fair interpretation of the evidence, and hence, was not against the weight of the evidence (*see Nicastro v Park*, 113 AD2d 129, 134 [1985]). Where, as here, conflicting expert testimony is presented, the jury is entitled to accept one expert's opinion, and reject that of another expert (*see Speciale v Achari*, 29 AD3d 674, 675 [2006]; *Connolly v Pastore*, 203 AD2d 412, 413 [1994]). The jury's resolution of conflicting expert testimony is entitled to great weight on appeal, as the jury had the opportunity to observe and hear the experts (*see Fryer v Maimonides Med. Ctr.*, 31 AD3d 604, 605 [2006]; *Speciale v Achari*, 29 AD3d at 675).

Mandeville's challenges to certain portions of the jury charge and the verdict sheet are unpreserved for appellate review (*see* CPLR 4110-b; *Kwa v Roberts*, 18 AD3d 444 [2005]; *Hamilton v Raftopoulos*, 176 AD2d 916, 917 [1991]). In any event, his contentions are without merit. In this regard, one physician can be held vicariously liable for another physician's active negligence if the physician had "some control of" the actively negligent physician's "course of treatment" of a patient (*Kavanaugh v Nussbaum*, 71 NY2d 535, 547 [1988]; *see Graddy v New York Med. Coll.*, 19 AD2d 426, 429 [1963]). Thus, a finding of vicarious liability could be predicated upon a physician's "control in fact" over an actively negligent physician (*Kavanaugh v Nussbaum*, 71 NY2d at 547; *see Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]; *cf. Reeck v Huntington Hosp.*, 215 AD2d 464, 465-466 [1995]). As previously indicated, evidence was presented from which the jury could rationally conclude that Mandeville exercised "control in fact" over the manner in which the resident made the uterine incision. Therefore, contrary to Mandeville's contention, the trial court correctly instructed the jury that it could hold him vicariously liable for the resident's negligent acts if it concluded that the resident was under his "direct supervision" at the time she made the uterine incision (*see Kavanaugh v Nussbaum*, 71 NY2d at 547; *Turcsik v Guthrie Clinic, Ltd.*, 12 AD3d 883, 885-886 [2004]). Furthermore, contrary to Mandeville's contention, since he was properly found to be vicariously liable, the jury did not need to apportion fault between him and the resident (*see* CPLR 1602 [2] [iv]; *Rangolan v County of Nassau*, 96 NY2d 42, 47 [2001]).

However, we agree with Mandeville that the awards for past pain and suffering and future pain and suffering deviate materially from what would be reasonable compensation, and are excessive to the extent indicated (*see* CPLR 5501 [c]; *cf. Seidner v Unger*, 245 AD2d 362 [1997]; *Artis v City of New York*, 183 AD2d 685, 686 [1992]). The evidence showed that the scar was approximately two inches long, near the hairline, and not readily noticeable. In addition, Hubbard testified that the scar has "lightened" over time.

Mandeville's remaining contentions either are without merit or do not require reversal. Lifson, J.P., Dillon, Covello and McCarthy, JJ., concur.