Hauser v Fort Hudson Nursing Ctr., Inc. (2021 NY Slip Op 07325)





Hauser v Fort Hudson Nursing Ctr., Inc.


2021 NY Slip Op 07325


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

531436 533013

[*1]Jennifer Hauser, as Administrator of the Estate of Bert Dwain Butler Sr., Deceased, Respondent,
v
Fort Hudson Nursing Center, Inc., et al., Appellants.

Calendar Date:November 22, 2021

Before: Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.


Goldberg Segalla, LLP, Albany (Jonathan M. Bernstein of counsel), for appellants.
Finkelstein & Partners, Newburgh (Marie M. DuSault of counsel), for respondent.


Garry, P.J.
Appeals (1) from an order of the Supreme Court (Muller, J.), entered March 2, 2020 in Washington County, which denied defendants' motion in limine, and (2) from an order of said court, entered February 5, 2021 in Washington County, which, upon reargument, partially adhered to its prior decision.
For a few months before he died, Bert Dwain Butler Sr. (hereinafter decedent) was a resident of defendant Fort Hudson Nursing Center, Inc., a residential health care facility that is operated by defendant Fort Hudson Health System, Inc. Plaintiff, as administrator of decedent's estate, commenced this action alleging four causes of action: (1) violations of Public Health Law §§ 2801-d and 2103-c, coupled with a claim for punitive damages and counsel fees (see Public Health Law §
2801-d [1], [2], [6]); (2) negligence and gross negligence; (3) conscious pain and suffering; and (4) wrongful death. After a jury trial was scheduled and plaintiff submitted a proposed verdict sheet, defendants filed a motion in limine, as relevant here, to preclude plaintiff from presenting (1) separate interrogatories on the verdict sheet with respect to decedent's right to recover for "physical harm, emotional harm and death" pursuant to Public Health Law § 2801-d and the wrongful death and survivorship statutes, and (2) a claim for damages under Public Health Law § 2801-d cumulatively with claims for "conscious pain and suffering" pursuant to the wrongful death and survivorship statutes (see generally EPTL 5-4.3 [a]; 11-3.3 [a]). Supreme Court denied defendants' motion (67 Misc 3d 1204[A] [2020]). On defendants' subsequent motion to reargue, the court granted reargument but adhered to its original decision as to all issues relevant here (71 Misc 3d 275 [2021]). Defendants appeal from the court's original order and its order upon reargument.[FN1]
Defendants contend that Supreme Court committed reversable error in interpretating Public Health Law § 2801-d to include death of a nursing home patient as an injury for which damages may be recovered. "When presented with a question of statutory interpretation, . . . [t]he statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [citations omitted]; see Desiderio v Ochs, 100 NY2d 159, 169 [2003]). Courts must "construe the provisions of the challenged law together unless a contrary legislative intent is expressed, and harmonize the related provisions in a way that renders them compatible" (Board of Trustees of the Vil. of Groton v Pirro, 152 AD3d 149, 153 [2017] [internal quotation marks, ellipsis and citations omitted]; see Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group LLC, 34 NY3d 1, 7 [2019]; Hernandez v State of New York, 173 AD3d 105, 111 [2019]).
As pertinent here, Public Health Law § 2801-d (1) provides that "[a]ny residential health care facility that deprives [*2]any patient of said facility of any right or benefit . . . shall be liable to said patient for injuries suffered as a result of said deprivation, except as [otherwise] provided. . . . For the purposes of this section, 'injury' shall include, but not be limited to, physical harm to a patient; emotional harm to a patient; death of a patient; and financial loss to a patient." Public Health Law § 2801-d (2) states that, "[u]pon a finding that a patient has been deprived of a right or benefit and that said patient has been injured as a result of said deprivation
. . ., compensatory damages shall be assessed in an amount sufficient to compensate such patient for such injury, but in no event less than [25%] of the daily per-patient rate of payment established for the residential health care facility under [Public Health Law § 2807] . . . for each day that such injury exists. In addition, where the deprivation of any such right or benefit is found to have been willful or in reckless disregard of the lawful rights of the patient, punitive damages may be assessed."
The express language of Public Health Law § 2801-d (1) provides that a nursing home facility is liable to a "patient" for "injuries suffered as a result of" the deprivation of a right or benefit conferred by any contract, statute or regulation, expressly defining "injury" to include "death of a patient." This plain reading of the unambiguous language is supported by the legislative history, which identifies the statute's purposes of protecting the rights of nursing home patients and deterring facilities from violating those rights (see e.g. Governor's Program Bill No. 42, Bill Jacket, L 1975, ch 658 at 18-19). Thus, decedent had a cause of action against defendants for his death. He obviously could not personally prosecute an action after his death, but "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent" (EPTL 11-3.2 [b]). It thus appears that plaintiff, as administrator of decedent's estate, properly commenced this action on his behalf to recover for the injury of his death.
Defendants assert that the common law, as well as the wrongful death and survivorship statutes, limit the claims that nursing home patients and their estates may bring to causes of action for injuries that accrued before death (see EPTL 11-3.3 [a]), and that surviving family members are limited to recovering the amount that a factfinder "deems to be fair and just compensation for the pecuniary injuries resulting from the decedent's death to [those family members]" (EPTL 5-4.3 [a]). Indeed, New York's common law "does not recognize suits to recover damages for the wrongful death of an individual" (Liff v Schildkrout, 49 NY2d 622, 632 [1980]; see Sand v Chapin, 238 AD2d 862, 863 [1997]); rather, "all causes of action arising from [*3]the death of an individual must be maintained in accordance with statutory authority" (Liff v Schildkrout, 49 NY2d at 631). Further, "[t]he wrongful death statute created a new cause of action based not upon damage to the estate of the deceased because of death, but rather for the pecuniary injury to the surviving spouse and next of kin of the decedent" (id. at 632-633 [internal quotation marks and citations omitted]; see EPTL 5-4.3 [a]; Sand v Chapin, 238 AD2d at 863-864). Defendants' argument — which limits the available options to the common law and two statutes addressing recovery after death, inexplicably ignoring other statutes addressing this topic — would result in holding that decedent would not be entitled to any damages for his death. However, this result would be contrary to the plain language of Public Health Law § 2801-d (see Matter of Springer v Board of Educ. of the City Sch. Dist. of the City of N.Y., 27 NY3d 102, 107-108 [2016]; Matter of Matzell v Annucci, 183 AD3d 1, 6 [2020]). The Legislature enacted that statute in derogation of common law, and courts must apply it as written (see generally Shanahan v Monarch Eng'g Co., 219 NY 469, 481 [1916]).
Defendants further argue that redress for injuries defined under Public Health Law § 2801-d (1) is limited to "compensatory damages" (or punitive damages, if they can be established) (see Public Health Law § 2801-d [2]), and compensatory damages are generally limited to those provided by the wrongful death and survivorship statutes. As noted above, the wrongful death and survivorship statutes do not permit damages to a person for his or her own death. Hence, imposing here the limits urged by defendants would render meaningless a nursing home's potential statutory liability to a patient for his or her death.
Although "when a word having an established meaning at common law is used in a statute, the common law meaning is generally followed" (McKinney's Cons Laws of NY, Book 1, Statutes § 233, Comment; see Chauca v Abraham, 30 NY3d 325, 330-331 [2017]), "the provisions of the applicable statutory scheme must be construed together and harmonized in a way that renders them compatible and achieves the legislative purpose" (Matter of Covert v Niagara County, 172 AD3d 1686, 1688 [2019]). Doing so here, the portion of the statute providing for minimum daily damages must be read to apply to non-death injuries, which can be calculated for each day that the patient was deprived of a right or benefit; for the injury of a patient's death, that minimum does not apply and "compensatory damages shall be assessed in an amount sufficient to compensate such patient for such injury" (Public Health Law § 2108-d [2]; compare General Municipal Law §§ 205-a [1]; 205-e [1] [setting minimum monetary amount that a liable party must pay to a decedent's surviving heirs]).[FN2] "Such a reading clearly gives effect to each and every part of the statute and avoids the absurd result advocated by [defendants]" ([*4]Matter of R.A. Bronson, Inc. v Franklin Correctional Facility, 255 AD2d 723, 725 [1998]; see Matter of Castelli v NRG, 85 AD3d 1414, 1416 [2011], lv denied 17 NY3d 714 [2011]). Any other interpretation would render Public Health Law § 2801-d (1) and (2) incompatible with respect to the injury of death, consequently undermining the Legislature's choice to specify "death" as a type of redressable injury under Public Health Law § 2801-d (1) and, more generally, chipping away at the statute's overall goal of deterring nursing homes from depriving patients of their rights.
As Supreme Court reasoned, and contrary to defendants' contention, this analysis is analogous to federal claims of civil rights violations under 42 USC § 1983. Like claims pursuant to Public Health Law § 2801-d, "[t]he goals of [42 USC] § 1983 . . . are two-fold: compensating victims for suffered wrongs and deterring future deprivations of . . . rights through compensatory and, where appropriate, punitive damages. Moreover, . . . Congress intended significant recompense when a . . . violation caused the death of a victim. The general legislative history of [42 USC § 1983] makes clear that death was among the . . . violations that Congress intended to remedy" (Collado v City of New York, 396 F Supp 3d 265, 279 [SD NY 2019] [internal quotation marks and citations omitted]). Within this context, federal courts have held that, pursuant to 42 USC § 1983, a claimant can recover loss-of-life damages in addition to other remedies (see e.g. id.; Banks v Yokemick, 177 F Supp 2d 239, 252 [SD NY 2001]). Similarly, requiring nursing homes to pay damages for a patient's death will uphold the statute's goal of deterring violations of patient rights (see e.g. Banks v Yokemick, 177 F Supp 2d at 251-252; Roman v City of Richmond, 570 F Supp 1554, 1557 [ND Cal 1983] [noting that "(w)here a defendant is required to bear a greater economic loss where he (or she) injures a person by the use of excessive force than when he (or she) kills the person, the result is a tacit authorization that the actor should inflict excessive force to the point of death," so "courts must fashion a remedy to prevent this result; an award of damages to deter such an unconstitutional use of force is appropriate"]).
Finally, defendants contend that Supreme Court impermissibly allowed for double recovery under Public Health Law § 2801-d and a pain and suffering claim pursuant to the survivorship statute (see EPTL 11-3.2 [b]) because, in their view, these alleged injuries are essentially the same. Public Health Law § 2801-d (4) provides, in pertinent part, that "[t]he remedies provided in this section are in addition to and cumulative with any other remedies available to a patient, at law or in equity or by administrative proceedings, including tort causes of action, and may be granted regardless of whether such other remedies are available or are sought." The statute's unambiguous text allows for simultaneous recovery [*5]under both Public Health Law § 2801-d and, as is the case here, a negligence cause of action (see Kash v Jewish Home & Infirmary of Rochester, N.Y., Inc., 61 AD3d 146, 149-150 [2009]; see also Fleming v Barnwell Nursing Home & Health Facilities, 309 AD2d 1132, 1132-1133 [2003])
Contrary to defendants' contention, "damages under this statute are not the same as pain and suffering damages" given that, for example, "an award of pain and suffering damages requires consciousness of the pain and suffering, but a claim under this statute does not" (Rosenblatt v Center for Nursing & Rehabilitation, Inc., 70 Misc 3d 1220[A], 2021 NY Slip Op 50166[U], *13 [Sup Ct, Kings County 2021]). Although the First Department recently held that an award of damages for pain and suffering under a theory of a violation of Public Health Law § 2801-d — just as in negligence or malpractice claims — requires proof that the decedent experienced at least some cognitive awareness following the injury (see Smith v Northern Manhattan Nursing Home, Inc., 195 AD3d 508, 509 [2021]), Public Health Law § 2801-d does not contain such a requirement or duplicate the elements of a negligence cause of action (see Henry v Sunrise Manor Ctr. for Nursing & Rehabilitation, 147 AD3d 739, 741 [2017] [noting that the statute does not require "deviation from accepted standards of medical practice nor breach of a duty of care. Rather, it contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule."]; Zeides v Hebrew Home for Aged at Riverdale, 300 AD2d 178, 179 [2002]). Indeed, the statute was enacted in recognition of the vulnerability of nursing home patients and to permit easier recovery for such patients who were injured by a facility's deprivation of patient rights; "by the language in section 2801-d (4), . . . the Legislature has explicitly expressed its intent to add to the available tort remedies" (Doe v Westfall Health Care Ctr., 303 AD2d 102, 111-112 [2002]). Although, at common law, damages for loss of enjoyment of life cannot be awarded to a person whose injuries preclude awareness of the loss as such damages serve no compensatory purpose (see McDougald v Garber, 73 NY2d 246, 254-255 [1989] [stating that awards of damages for negligence are to restore the injured parties to their prior position, "not to punish the wrongdoer(s)"]), the Legislature chose to allow such damages through the statute at issue here to serve a purpose beyond simply compensating the victim, i.e., to deter violations of patient rights. "It is precisely because of the inadequacy of the existing common-law causes of action to redress the abuse of patients in nursing homes that Public Health Law § 2801-d was enacted (see Mem of State Exec Dept, 1975 McKinney's Session Laws of NY, at 1685-1686; Governor's Mem approving L 1975, chs 648-660, 1975 McKinney's Session Laws of NY, at 1764)" (Doe v Westfall Health Care Ctr., 303 AD2d at 112).
Double [*6]recovery is not permitted for a single injury, even if a patient can prove separate causes of action that result in the same injury (see Milks v McIver, 264 NY 267, 270 [1934]; Leighty v Brunn, 125 AD2d 648, 648-649 [1986]; Berg-Bakis Ltd. v City of Yonkers, 90 AD2d 784, 784 [1982], appeal dismissed 60 NY2d 664 [1983], lv denied 64 NY2d 603 [1985]). However, plaintiff may be able to prove different injuries under her separate theories. Moreover, the Legislature could not have intended that a plaintiff would be prevented from asserting a Public Health Law § 2801-d cause of action merely because he or she asserted common-law causes of action, as the plaintiff may not ultimately prevail on the latter (see Public Health Law § 2801-d [4]; Doe v Westfall Health Care Ctr., 303 AD2d at 112). Accordingly, Supreme Court correctly denied defendants' motion, though they may renew their request to limit damages either at or after trial, depending on the proof presented.
Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the orders are affirmed, with costs.



Footnotes

Footnote 1: An order ruling on a motion in limine is generally not appealable as of right or by permission given that an order made in advance of trial that merely determined the admissibility of evidence is essentially an unappealable advisory ruling (see Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 139 AD3d 1192, 1193-1194 [2016]; Lynch v Carlozzi, 121 AD3d 1308, 1309 [2014]). "However, an order that limits the scope of issues to be tried, affecting the merits of the controversy or the substantial rights of a party, is appealable" (Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1213 [2020] [internal quotation marks and citations omitted]; see Dischiavi v Calli, 125 AD3d 1435, 1436 [2015]; Vaughan v Saint Francis Hosp., 29 AD3d 1133, 1135 [2006]). Supreme Court's March 2020 order on the motion in limine is far from advisory as it has a concretely expansive effect on defendants' potential liability for decedent's alleged injuries; thus, that order is appealable (see Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 139 AD3d at 1193-1194; Dischiavi v Calli, 125 AD3d at 1436; Frankel v Vernon & Ginsburg, LLP, 118 AD3d 479, 479 [2014]; compare Lynch v Carlozzi, 121 AD3d at 1309-1310; Brindle v Soni, 41 AD3d 938, 939 [2007]).

Footnote 2: Allowing the statute's minimum award for the injury of death would create an absurd result in that compensation would essentially exist in perpetuity following the death.