[755 NYS2d 769]

Theresa Doe, Individually and as Administratrix of the Estate of Katherine Doe, Deceased, Appellant, v Westfall Health Care Center, Inc., et al., Respondents, et al., Defendant.

Fourth Department, December 30, 2002

**APPEARANCES OF COUNSEL**

*Redmond & Parrinello, LLP,* Rochester (*John R. Parrinello* of counsel), for appellant.

*Rupp, Baase, Pfalzgraf & Cunningham LLC,* Buffalo (*Jeffrey F. Baase* of counsel), for Westfall Health Care Center, Inc., respondent.

*Ward Norris Heller & Reidy LLP,* Rochester (*Harold A. Kurland* of counsel), for University of Rochester, respondent.

### OPINION OF THE COURT

PIGOTT, JR., P.J.

Plaintiff commenced these actions individually and as administratrix of the estate of her daughter, Katherine, who died in March 1997. During the 12 years before her death, Katherine was in a chronic vegetative state as the result of a head injury she sustained in an automobile accident. Plaintiff was appointed conservator for her daughter in 1986, and in 1995 she signed an admission agreement to have her daughter admitted to defendant Westfall Health Care Center, Inc., a skilled care nursing home. Pursuant to that agreement, Westfall promised to provide 24-hour nursing care and "a clean, healthful environment" for Katherine. Schedule B of the agreement set forth the rights of residents, including the right to be "free from * * * physical * * * and sexual abuse * * *." In the summer of 1995, Katherine was raped by a male health care aide at Westfall. After Westfall discovered that Katherine was pregnant, she was transferred to a hospital. In March of 1996, she gave birth to a baby boy. Katherine died the following year of causes unrelated to the pregnancy. Plaintiff adopted the child and is presently raising him. The health care aide who raped Katherine was convicted of various crimes as a result of the rape and is presently incarcerated.

Plaintiff commenced two separate actions that subsequently were consolidated, one against, inter alia, Westfall and the other against defendant University of Rochester (collectively, defendants), Westfall's alleged corporate "alter ego." The first five causes of action in each complaint are identical: the first is for negligence, the second for violation of Public Health Law § 2801-d, the third for breach of contract, the fourth for strict liability and the fifth is for breach of the warranty of habitability. The first and third causes of action also assert claims on behalf of plaintiff individually, for damages that include the cost of raising Katherine's child. A sixth cause of

action is asserted against the University, seeking to pierce the corporate veil.

The University moved to dismiss the first cause of action in the complaint against it, and both the University and Westfall sought dismissal of the second, fourth and fifth causes of action for failure to state a cause of action. The University also sought dismissal of the sixth cause of action in the complaint against it, for failure to state a cause of action. In addition, both defendants sought dismissal of all claims on behalf of plaintiff individually.

Supreme Court denied that part of the University's motion seeking dismissal of the first cause of action to the extent that it is based on the rape and on the negligent hiring, training, and supervision of employees, and otherwise granted defendants' motions in their entirety. In dismissing the second causes of action for the violation of Public Health Law § 2801-d, the court noted that "[t]he purpose of Public Health Law § 2801-d was not to create a new personal injury cause of action based on negligence when that remedy already existed," and the court determined that the second causes of action were "essentially predicated upon Westfall's alleged negligence in treatment, its failure to hire, train and supervise its staff and to prevent the physical/sexual assault committed upon Katherine." In granting that part of the University's motion seeking dismissal of the sixth cause of action, the court noted that a cause of action to pierce the corporate veil could not stand on its own, although the court sua sponte granted plaintiff leave to replead the remaining causes of action for negligence and breach of contract to include such allegations.

On appeal, plaintiff contends that the court erred in dismissing her individual claims for negligence and breach of contract and erred in dismissing the second, fourth and fifth causes of action, for the violation of Public Health Law § 2801-d, strict liability and breach of the warranty of habitability. We conclude that the court erred in dismissing the Public Health Law causes of action but properly granted those parts of defendants' motions seeking dismissal of plaintiff's individual claims and the fourth and fifth causes of action. Plaintiff failed to brief any issue with respect to the propriety of the court's dismissal of the sixth cause of action against the University, and thus any issue with respect to the dismissal of that cause of action is deemed abandoned (*see Baliva v State Farm Mut. Auto. Ins. Co.* [appeal No. 2], 286 AD2d 953, 955).

I

## *Public Health Law § 2801-d*

■ Public Health Law § 2801-d, entitled "Private actions by patients of residential health care facilities," provides in relevant part:

"1. Any residential health care facility that deprives any patient of said facility of any right or benefit, as hereinafter defined, shall be liable to said patient for injuries suffered as a result of said deprivation, except as hereinafter provided. For purposes of this section a 'right or benefit' of a patient of a residential health care facility shall mean any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any applicable federal statute, code, rule or regulation * * *. No person who pleads and proves, as an affirmative defense, that the facility exercised all care reasonably necessary to prevent and limit the deprivation and injury for which liability is asserted shall be liable under this section.

"2. Upon a finding that a patient has been deprived of a right or benefit and that said patient has been injured as a result of said deprivation, and unless there is a finding that the facility exercised all care reasonably necessary to prevent and limit the deprivation and injury to the patient, compensatory damages shall be assessed in an amount sufficient to compensate such patient for such injury, but in no event less than twenty-five percent of the daily per-patient rate of payment established for the residential health care facility under section twenty-eight hundred seven of this article or, in the case of a residential health care facility not having such an established rate, the average daily total charges per patient for said facility, for each day that such injury exists. In addition, where the deprivation of any such right or benefit is found to have been willful or in reckless disregard of the lawful rights of the patient, punitive damages may be assessed."

The section also preserves a patient's right to seek remedies other than damages, "including injunctive and declaratory

relief" (§ 2801-d [3]). Subdivision (4) of section 2801-d authorizes the court to permit the commencement of a class action. It further provides in relevant part: "The remedies provided in this section are in addition to and cumulative with any other remedies available to a patient, at law or in equity or by administrative proceedings" (*id.*).

Public Health Law § 2803-c, entitled "Rights of patients in certain medical facilities," enumerates the rights of patients in such facilities, including nursing homes, declares them to be "the public policy of the state" and requires that a "copy of such statement of rights and responsibilities shall be posted conspicuously in a public place in each facility covered hereunder" (§ 2803-c [1]). Among those rights is the right of a patient to "be free from mental and physical abuse and from physical and chemical restraints [except those ordered by a physician]" (§ 2803-c [3] [h]).

Federal law touches upon the issue presented herein through statutes and regulations enacted to ensure that patients in nursing facilities funded by Medicare and Medicaid receive adequate treatment and are free from abuse (*see generally* 42 USC § 1396r [c]; 42 CFR 483.13). Section 1396r provides, similarly to Public Health Law § 2803-c, that patients in "nursing facilit[ies]" have the right to be free from physical abuse (42 USC § 1396r [c] [1] [A] [ii]). Subdivision (h) of section 1396r, which subdivision is entitled "Enforcement process," provides in relevant part:

"(8) Construction

"The remedies provided under this [subdivision] are in addition to those otherwise available under State or Federal law and shall not be construed as limiting such other remedies, including any remedy available to an individual at common law."

In addition, certain rights enumerated in Public Health Law § 2803-c (3) are ensured to residents of Westfall by contract. Schedule B of the admission agreement provides in relevant part:

"The Facility presents these 'Rights and Responsibilities' with the expectation that observation of those rights and responsibilities by the Resident and Facility will contribute to a better quality of life for all of us living, working, or visiting in the Facility. We recognize that the Facility has a legal

and moral responsibility to the Resident and we believe each Resident should also recognize certain responsibilities and obligations to fellow Residents, staff, and the administration. * * *

"RESIDENT RIGHT #7

"RESIDENT RIGHTS:

"The Resident is free from mental, physical, verbal, and sexual abuse, and free from chemical and (except in emergencies) physical restraints except as authorized in writing by a Physician and for a specified and limited period of time, or when necessary to protect the Resident from injury to him/ herself or to others."

In *Goldberg v Plaza Nursing Home Comp.* (222 AD2d 1082), this Court previously reviewed the propriety of a cause of action for the violation of Public Health Law § 2801-d. According to the amended complaint in *Goldberg*, the plaintiff's decedent, a 95-year-old patient in defendant nursing home, awoke from a nap and summoned defendant's employees to remove the restraint vest that she wore, while sleeping, in accordance with her doctor's orders. No one responded to her call, and she was either strangled by the vest while trying to release herself from it or became so fearful and agitated that she died from cardiac arrest. The amended complaint further alleged that defendant nursing home hid the circumstances of decedent's demise from decedent's family and that no autopsy was conducted. In addition to the Public Health Law § 2801-d cause of action, the plaintiff in *Goldberg* asserted causes of action for wrongful death and negligent and intentional infliction of emotional distress. Defendant moved for summary judgment dismissing the amended complaint, asserting, inter alia, that the Public Health Law cause of action was a mere recasting of the wrongful death cause of action. We concluded that Supreme Court erred in denying that part of defendant's motion seeking summary judgment dismissing that cause of action. We wrote:

"The record establishes that plaintiff's fourth cause of action is predicated on defendant's negligence. The various memoranda that accompanied the enactment of Public Health Law § 2801-d show that the purpose of that section was to provide a remedy to patients in residential health care facilities who are denied the rights and benefits enumerated in

Public Health Law § 2803-c (3); *the purpose was not to create a new personal injury cause of action based on negligence when that remedy already existed * * *.* Here, plaintiff possessed the right to bring a wrongful death action predicated upon defendant's negligence notwithstanding the enactment of that section. Thus, we conclude that to give Public Health Law § 2801-d the interpretation urged by plaintiff would authorize a cause of action under that section for every case based upon negligence and implicating a residential health care facility. Further, we conclude that it is unlikely that the Legislature envisioned extension of the principle of strict liability to residential health care facilities for injuries and damages that are traditionally the subject of tort liability" (*Goldberg,* 222 AD2d at 1084 [emphasis added]).

We note that our characterization of the Public Health Law cause of action as one for strict liability was incorrect; it is an affirmative defense to liability under section 2801-d (1) "that the facility exercised all care reasonably necessary to prevent * * * the * * * injury for which liability is asserted."

We decline to apply the reasoning set forth in *Goldberg.* Instead, we conclude that the clear intent of section 2801-d was to expand the existing remedies for conduct that, although constituting grievous and actionable violations of important rights, did not give rise to damages of sufficient monetary value to justify litigation.

An analogous situation in which the Legislature established more than one remedy for a wrong is the private right of action authorized pursuant to General Business Law § 349 (h), which may be brought regardless of other causes of action that a plaintiff may have. In *Karlin v IVF Am.* (93 NY2d 282, 289, *rearg denied* 93 NY2d 989, *modfg* 239 AD2d 560), plaintiffs sued defendants, entities providing in vitro fertilization services, for deceptive acts and practices under section 349, and plaintiffs alleged a separate cause of action for lack of informed consent in violation of Public Health Law § 2805-d. In dismissing, inter alia, the General Business Law § 349 cause of action, the Second Department wrote:

"We decline to extend the application of the consumer fraud statutes to the providers of medical services * * *. *To do so would lead to a drastic*

*change in basic tort law where the Legislature has not explicitly expressed its intent to effect such a change \* \* \**. The plaintiffs possess a viable cause of action to recover damages for lack of informed consent which should not be augmented by rights to additional recovery" (*Karlin*, 239 AD2d at 561 [emphasis added]).

Upon remittal, Supreme Court granted defendants' motion for summary judgment dismissing the Public Health Law § 2805-d cause of action, the sole remaining cause of action, on the ground that it was time-barred (*see Karlin*, 93 NY2d at 290). On appeal, the Court of Appeals reinstated the General Business Law cause of action, concluding that defendants' multimedia advertising was "precisely the sort of consumer-oriented conduct that is targeted by [section 349]" (*id.* at 293). The Court further concluded that a plaintiff could simultaneously have a statutory claim for lack of informed consent under the Public Health Law and a statutory claim for consumer fraud under the General Business Law (*see id.*). The Court rejected the concern of the defendants that permitting plaintiffs to sue doctors for deceptive practices and false advertising would lead to a "tidal wave of litigation against doctors" (*id.* at 294). We conclude that such an apprehension would be similarly unfounded with respect to Public Health Law § 2801-d.

In our case, the complained-of conduct—here, the rape of plaintiff's decedent—is precisely the sort of conduct that the Public Health Law section at issue was designed to target, but recovery for such conduct is often barred for plaintiffs who sue at common law. Plaintiff here may not sue defendants on a theory of respondeat superior, arising from the vicarious liability of defendants for the acts of their employees, nor, as discussed *infra*, may plaintiff sue defendants on a theory of strict liability (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251-252). Although plaintiff may maintain a negligence action against defendants for negligent hiring, training and supervision of the health care aide, suits against hospitals or nursing homes to recover damages arising from sexual assaults upon patients usually founder because of the absence of the requisite element of foreseeability, i.e., the facility's lack of prior knowledge of the perpetrator's criminal tendencies (*see e.g. Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932; *Garcia v Montefiore Med. Ctr.*, 293 AD2d 264; *Diaz v New York Downtown Hosp.*, 287 AD2d 357; *cf. Kladstrup v Westfall Health Care Ctr.*, 183 Misc 2d 11, 14-15).

In *N.X.* (97 NY2d 247), a surgical resident had sexually molested a woman recovering from surgery, despite the presence of three nurses in the recovery room. The Court of Appeals agreed with the First Department that defendant hospital was not vicariously liable for the misconduct of the surgical resident (*see id.* at 251), and further declined the plaintiff's "invitation to adopt a rule of 'heightened' duty premised on plaintiff's sedated condition that would require nurses in such instances to stop doctors and other health care professionals to ascertain their purpose before allowing them to approach a patient" (*id.* at 252). The Court wrote:

> "A hospital has a duty to safeguard the welfare of its patients, even from harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety * * *. This sliding scale of duty is limited, however; it does not render a hospital an insurer of patient safety or require it to keep each patient under constant surveillance * * *. As with any liability in tort, the scope of a hospital's duty is circumscribed by those risks which are reasonably foreseeable" (*id.* at 252-253).

The Court, however, reinstated the direct cause of action against the hospital alleging that the nurses failed to protect the plaintiff adequately while she was recovering from surgery. The Court determined that there were issues of fact whether the nurses who were present in the recovery room during the sexual assault "actually observed or unreasonably ignored events immediately preceding the misconduct which indicated a risk of imminent harm to plaintiff, triggering the need for protective action" (*id.* at 252). In other words, because the plaintiff therein was molested in the presence of three hospital employees, her cause of action was preserved.

Nursing home patients who are in a vegetative state, such as plaintiff's decedent, are more vulnerable to abuse and mistreatment than sedated surgical patients, due to their often extended residence in nursing homes. The legislative history of section 2801-d reveals a recognition of that vulnerability, and of the abuses that preceded the enactment of that legislation in 1975. The Legislature thereby provided that vulnerable population with an easier route by which to enforce "any right * * * created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any applicable federal statute, code, rule or regulation" (§ 2801-d [1]). Indeed, by the language in section 2801-d

(4) that "[t]he remedies provided in this section are in addition to and cumulative with any other remedies available to a patient, at law or in equity or by administrative proceedings," the Legislature has explicitly expressed its intent to add to the available tort remedies. It is precisely because of the inadequacy of the existing common-law causes of action to redress the abuse of patients in nursing homes that Public Health Law § 2801-d was enacted (*see* Mem of State Exec Dept, 1975 McKinney's Session Laws of NY, at 1685-1686; Governor's Mem approving L 1975, chs 648-660, 1975 McKinney's Session Laws of NY, at 1764). We are convinced that the Legislature could not have intended that plaintiff be prevented from asserting a cause of action under that section merely because her simultaneously asserted common-law causes of action survived a motion to dismiss where, as here, those common law causes of action ultimately may not survive a motion for summary judgment. Plaintiff concedes that such a situation may exist in this case (*cf. Kladstrup*, 183 Misc 2d at 14-15).

We therefore overrule our decision in *Goldberg* insofar as we determined therein that summary judgment dismissing the Public Health Law cause of action was appropriate despite doubt concerning the efficacy of the remaining common-law cause of action. Even if the first and third causes of action, for negligence and breach of contract, do not survive further motions, the second causes of action, for the violation of Public Health Law § 2801-d, will stand. We further reject any unintended implication in *Goldberg* (222 AD2d at 1084) that fiduciary representatives of incompetent patients who are abused in skilled nursing homes have no redress for that abuse, despite the enactment of a statutory cause of action intended to "provide a remedy" for violations of a nursing home patients' personal and civil rights. On this set of facts, we need go no further.

II

*Strict Liability*

Plaintiff contends that defendants had a special relationship with Katherine and therefore had a special duty to protect her, given her extremely vulnerable condition, and because that duty was breached by defendants' employee, strict liability should be imposed (*see generally Cornell v State of New York*, 46 NY2d 1032, 1033, *rearg denied* 47 NY2d 951; *Stone v Eisen Co.*, 219 NY 205, 208-209). Defendants counter that institu-

tions such as hospitals and nursing homes may not be held strictly liable on a theory of vicarious liability for sexual assaults on patients by employees of such facilities, because such conduct is not in furtherance of the employer's business (*see e.g. N.X.*, 97 NY2d at 251; *Judith M.*, 93 NY2d at 933; *see generally Adams v New York City Tr. Auth.*, 88 NY2d 116, 121). We agree with defendants. As previously noted, the Court in *N.X.* (97 NY2d at 252) declined the invitation of the plaintiff therein to recognize a "heightened" duty on the part of the hospital toward patients under sedation, notwithstanding the hospital's "duty to safeguard the welfare of its patients, even from harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety." However, the Court noted that the "sliding scale of duty is limited * * *; it does not render a hospital an insurer of patient safety or require it to keep each patient under constant surveillance" (*id.* at 253). The dismissal of the strict liability causes of action therefore was proper.

## III

### *Warranty of Habitability*

The court also properly dismissed the causes of action for breach of the warranty of habitability against both defendants (*see* Real Property Law § 235-b). "Plaintiff may not rely upon any alleged breach of the warranty of habitability to recover damages for personal injuries" (*Joyner v Durant*, 277 AD2d 1014, 1015; *see Richardson v Simone*, 275 AD2d 576, 577).

## IV

### *Plaintiff's Individual Claims*

The court properly dismissed all claims brought by plaintiff in her individual capacity. Plaintiff alleged in the first causes of action for negligence that defendants owed a duty directly to her and, in the third causes of action for breach of contract, plaintiff alleged a claim in her individual capacity based upon breach of the agreement, which plaintiff signed as conservator. Under both claims, plaintiff seeks to recover, inter alia, the costs associated with raising Katherine's child. On appeal, plaintiff contends that she is not seeking damages for her emotional distress (*see generally Johnson v Jamaica Hosp.*, 62 NY2d 523, 527-528).

Even if plaintiff were able to establish under the first causes of action that there was a duty of care running from defendants

directly to her, plaintiff has not alleged any legally cognizable damages owed to her by defendants. Damages cannot be recovered for the "wrongful birth" of a healthy child (*see generally O'Toole v Greenberg*, 64 NY2d 427, 432). Further, although plaintiff alleges that the child suffers from a congenital heart defect, she does not allege that the heart defect was the result of any negligence on the part of defendants (*see generally Becker v Schwartz*, 46 NY2d 401, 412-413).

Plaintiff further alleges that, as conservator/guardian of Katherine's property, she had a duty pursuant to Mental Hygiene Law § 81.20 (a) (6) (iv) to "use the property and financial resources and income available * * * to maintain and support those persons dependent upon [Katherine,] the incapacitated person." Because Katherine's child was born during plaintiff's conservatorship/guardianship, plaintiff alleges that she became obligated to use Katherine's property to support and maintain the child, and therefore may have been under a duty to sue for support of the child. However, even if a contract-based cause of action were available against defendants for the support of the child, due to a duty of care arising as incident to the contract (*see generally Sommer v Federal Signal Corp.*, 79 NY2d 540, 552-553; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226-227) or on a third-party beneficiary theory (*see generally Fourth Ocean Putnam Corp. v Interstate Wrecking Co.*, 66 NY2d 38, 43-45), such a cause of action could be brought only in Katherine's name, because any damages were suffered only by Katherine, the mother, to whom any duty to support the child ran. Notwithstanding any moral obligation of plaintiff to adopt the child, plaintiff had no legal obligation to do so (*see generally* Mental Hygiene Law § 81.36 [a] [3]).

V

*Conclusion*

Accordingly, we conclude that the order should be modified by denying those parts of the motions of defendants seeking dismissal of the second causes of action for the violation of Public Health Law § 2801-d and reinstating those causes of action against them.

GREEN, SCUDDER, BURNS and GORSKI, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified, on the law, by denying those parts of the motions of defendants Westfall Health

Care Center, Inc. and University of Rochester seeking dismissal of the second causes of action for the violation of Public Health Law § 2801-d and reinstating those causes of action against them and, as modified, the order is affirmed, without costs.