[873 NYS2d 819]

Gertrude Kash, Appellant, v Jewish Home and Infirmary of Rochester, N.Y., Inc., et al., Respondents.

Fourth Department, February 11, 2009

**APPEARANCES OF COUNSEL**

*Faraci Lange, LLP*, Rochester (*Stephen G. Schwarz* of counsel), for appellant.

*The Somerset Firm, LLC*, Canandaigua (*Margaret E. Somerset* of counsel), for Jewish Home and Infirmary of Rochester, N.Y., Inc., and another, respondents.

*Hirsch & Tubiolo, P.C.*, Rochester (*Christopher S. Noone* of counsel), for Lars-Goran Larsson, M.D., respondent.

### OPINION OF THE COURT

PINE, J.

### I

Plaintiff commenced this action seeking damages for injuries she sustained as the result of defendants' alleged medical malpractice. Several months after commencing the action, plaintiff moved for leave to amend the complaint by adding a separate cause of action under Public Health Law § 2801-d. For the reasons that follow, we conclude that Supreme Court erred in denying the motion.

### II

Public Health Law § 2801-d was enacted in 1975 and provides in pertinent part:

> "Any residential health care facility that deprives any patient of said facility of any right or benefit, as hereinafter defined, shall be liable to said patient for injuries suffered as a result of said deprivation, except as hereinafter provided. For purposes of this section a 'right or benefit' of a patient of a residential health care facility shall mean any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any applicable federal statute, code, rule or regulation . . .

> "The remedies provided in this section are *in addition to and cumulative with any other remedies available to a patient, at law or in equity or by administrative proceedings*" (§ 2801-d [1], [4] [emphasis added]).

The statute further provides that any damages recovered by a patient "shall be exempt for purposes of determining initial or continuing eligibility for [Medicaid]" (§ 2801-d [5]). Such significant relief is not available in a traditional tort cause of action. Furthermore, both punitive damages and attorneys' fees may be

awarded in a section 2801-d cause of action (*see* § 2801-d [2], [6]).

## III

This Court first addressed Public Health Law § 2801-d in 1995 in *Goldberg v Plaza Nursing Home Comp.* (222 AD2d 1082 [1995]), a case in which the plaintiff asserted traditional tort causes of action including wrongful death, as well as a cause of action under section 2801-d. Relying exclusively on the legislative history of the statute, we concluded that "it is unlikely that the Legislature envisioned extension of the principle of strict liability to residential health care facilities for injuries and damages that are traditionally the subject of tort liability" (*id.* at 1084; *see also Begandy v Richardson*, 134 Misc 2d 357, 360-361 [1987]). We further stated that "the purpose [of the statute] was not to create a new personal injury cause of action based on negligence when that remedy already existed" (*Goldberg*, 222 AD2d at 1084). Thus, because the plaintiff "possessed the right to bring a[n] . . . action predicated upon [the] defendant's negligence" (*id.*), we granted the defendant nursing home's motion seeking summary judgment dismissing the section 2801-d cause of action (*see id.* at 1083-1084).

We next addressed Public Health Law § 2801-d in 2002, when we "decline[d] to apply the reasoning set forth in *Goldberg*" (*Doe v Westfall Health Care Ctr.*, 303 AD2d 102, 109 [2002]). We permitted the plaintiff to assert a section 2801-d cause of action despite the fact that the plaintiff also asserted traditional tort causes of action (*see id.* at 109-112). In *Doe*, the plaintiff's decedent had been raped by an employee of the defendant nursing home (*see id.* at 104). As a result of the rape, she became pregnant and gave birth to a baby boy (*see id.*). The decedent later died from unrelated causes, and her mother, individually and as administratrix of her estate, commenced the action asserting, inter alia, traditional tort causes of action and a cause of action under section 2801-d (*see id.* at 104-105). Relying on the clear language of section 2801-d (4), we concluded that the plaintiff in *Doe* was entitled to assert both the section 2801-d cause of action and the traditional tort causes of action because "the Legislature ha[d] explicitly expressed its intent to add to the available tort remedies" (*id.* at 112). We noted, however, that the rape of the decedent was "precisely the sort of conduct that [section 2801-d] was designed to target[ ] but [that] recovery for such conduct [was] often barred for plaintiffs who

sue at common law" (*id.* at 110). Thus, our determination was based in part on the fact that, although the tort causes of action asserted by the plaintiff had survived a motion to dismiss, they "ultimately [might] not survive a motion for summary judgment" (*id.* at 112).

As our dissenting colleagues note, there is no difficulty with the sufficiency of plaintiff's evidence in this action and no bar to recovery if negligence is found. Thus, we are not faced with the same concerns as in *Doe*. We nevertheless conclude that, pursuant to the express terms of the statute, plaintiff is entitled to assert a cause of action under Public Health Law § 2801-d, regardless of the possible merit of the medical malpractice cause of action.

## IV

"As a general rule of statutory interpretation, application of a statute's clear language should not be ignored in favor of more equivocal evidence of legislative intent . . . [, and] the most direct way to effectuate the will of the Legislature is to give meaning and force to the words of its statutes" (*Desiderio v Ochs*, 100 NY2d 159, 169 [2003]).

Thus, " 'where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning' " (*Pultz v Economakis*, 10 NY3d 542, 547 [2008]). The Court of Appeals has stated that

"[a]bsent ambiguity[,] the courts may not resort to rules of construction to broaden the scope and application of a statute[ ] because no rule of construction gives the court discretion to declare the intent of the law *when the words are unequivocal* . . . Lastly, [t]he courts are not free to legislate and if any unsought consequences result, *the Legislature is best suited to evaluate and resolve them*" (*Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 107 [1997] [internal quotation marks omitted]).

Because we conclude that the language of Public Health Law § 2801-d is clear and unambiguous, we are required to give effect to its plain meaning. The remedies set forth in section 2801-d "are *in addition to and cumulative with* any other remedies available to a patient, at law or in equity or by administrative proceedings" (§ 2801-d [4] [emphasis added]). Therefore, although "plaintiff possessed the right to bring a[n] . . . action

predicated upon defendant[s'] negligence" (*Goldberg*, 222 AD2d at 1084), we conclude that she is not precluded from asserting a separate cause of action under section 2801-d.

The dissenting opinion states that Public Health Law § 2801-d (4) "makes it clear that a plaintiff is not *limited* to a cause of action pursuant to that section," and thus he or she may elect whether to pursue traditional tort causes of action or a section 2801-d cause of action. In our view, the dissenters fail to consider the clear language of the statute that the remedies of section 2801-d "are in addition to and cumulative with any other" right or remedy (§ 2801-d [4]). A plaintiff need not choose between traditional tort causes of action and a section 2801-d cause of action but, rather, may pursue both.

V

In concluding that we should adhere to our decisions in *Goldberg* and *Doe*, the dissenters rely on "the doctrine of stare decisis, which recognizes that legal questions, once resolved, should not be reexamined every time they are presented" (*Dufel v Green*, 198 AD2d 640, 640 [1993], *affd* 84 NY2d 795 [1995]). In our view, "[a]lthough due deference should be accorded the doctrine of stare decisis in order to promote consistency and stability in the decisional law, we should not blindly follow an earlier ruling [that] has been demonstrated to be unsound simply out of respect for that doctrine" (*Brennin v Perales*, 163 AD2d 560, 562 [1990]).

> "[T]he doctrine of *stare decisis*, like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason. The authorities are abundant to show that in such cases it is the duty of courts to re-examine the question" (*Rumsey v New York & New England R.R. Co.*, 133 NY 79, 85 [1892]; *see Matter of Eckart*, 39 NY2d 493, 498-499 [1976]).

Contrary to the statement of our dissenting colleagues, we are not "easily" casting aside the reasoned decisions of former members of this Court. At the time *Goldberg* was decided, it was the first appellate decision to address Public Health Law § 2801-d and, in *Doe*, this Court modified *Goldberg* in order to address a particularly heinous set of facts. We have concluded after careful consideration that it is our duty to reexamine those decisions and follow clear statutory language.

In adhering to the decision in *Doe*, our dissenting colleagues state that they would limit Public Health Law § 2801-d causes of action "to those cases in which recovery under a common-law cause of action would prove difficult or inadequate." We conclude, however, that such a rule is "unworkable" (*People v Damiano*, 87 NY2d 477, 489 [1996, Simons, J., concurring]). In order to adhere to *Doe*, a court would be required to determine preliminarily whether recovery on the traditional tort causes of action will "prove difficult or inadequate." Neither this Court in *Doe* nor the dissenters in this case have provided any criteria for such a determination. For example, how likely must it be that the traditional tort causes of action will fail before a section 2801-d cause of action will be permitted to stand, in accordance with *Doe*? This Court in *Doe* and the dissenters in this case have created an ambiguity not present in *Goldberg* and, in our view, that ambiguity creates the likelihood of inconsistent rulings and unpredictable results.

Since our holding in *Goldberg*, the First and Third Departments have permitted plaintiffs to assert both a Public Health Law § 2801-d cause of action and traditional tort causes of action (*see e.g. Leclaire v Fort Hudson Nursing Home, Inc.*, 52 AD3d 1101, 1102 [2008]; *Ward v Eastchester Health Care Ctr., LLC*, 34 AD3d 247 [2006]; *Fleming v Barnwell Nursing Home & Health Facilities*, 309 AD2d 1132, 1132-1133 [2003]; *Zeides v Hebrew Home for Aged at Riverdale*, 300 AD2d 178, 178-179 [2002]). Thus, the "lessons of time" and the clear language of section 2801-d have led us to conclude that *Goldberg*, as modified by *Doe*, "creates more questions than it resolves, [and that the law is] ultimately . . . better served by a new rule" (*People v Taylor*, 9 NY3d 129, 149 [2007]).

While the dissenting opinion notes that neither the First Department nor the Third Department has analyzed the legislative history of Public Health Law § 2801-d or determined whether such a cause of action is proper in cases where the plaintiff could successfully recover under a traditional tort cause of action, we conclude that the omission of such an analysis in the decisions of those Departments implicitly recognizes that none is necessary. Where, as here, the clear and unambiguous language of the statute provides that the section 2801-d rights and remedies "are in addition to and cumulative with any other" right or remedy available to a patient (§ 2801-d [4]), there is no reason to look to the legislative history of the statute (*see generally Desiderio*, 100 NY2d at 169).

## VI

Plaintiff is entitled to assert both a cause of action under Public Health Law § 2801-d and traditional tort causes of action. Accordingly, we conclude that the order should be reversed and plaintiff's motion granted upon condition that plaintiff shall serve the proposed amended complaint within 20 days of service of the order of this Court with notice of entry.

CENTRA, J. (dissenting).

### Introduction

We respectfully dissent and would affirm the order denying plaintiff's motion seeking leave to amend the complaint by adding a cause of action under Public Health Law § 2801-d. In our view, plaintiff may not rely upon that statute because she has stated a cause of action for medical malpractice that will not be difficult to prove.

### Facts

In February 2006 plaintiff became a long-term care resident of defendant Jewish Home and Infirmary of Rochester, N.Y., Inc., which is owned and operated by defendant Jewish Health Care System of Rochester, Inc. (collectively, Jewish Home). According to plaintiff, she suffered from a bladder retention problem and thus required straight catheterization in order to void her bladder. On March 5, 2006, however, a member of the nursing staff failed to perform the procedure, and plaintiff was required to leave her bed later in the evening in order to use the bathroom. While in the process of leaving her bed, her bladder spontaneously emptied onto the floor, and she slipped and fell. Over the next few days, plaintiff underwent diagnostic evaluations but was encouraged by the medical staff to attempt to ambulate and to attend physical therapy sessions. One of those evaluations was performed by defendant Lars-Goran Larsson, M.D., who allegedly failed to perform a neurological exam or even to note plaintiff's fall in his documentation of the evaluation.

Plaintiff's condition eventually worsened, causing plaintiff to experience severe pain, and she fell again on March 12, 2006 while attempting to ambulate. On March 15, 2006, plaintiff underwent a CT scan that revealed "a compression fracture of T7 and a compression deformity of T11." Nevertheless, defendants did not hospitalize plaintiff and allegedly "failed to

follow any spinal cord precautions to guard against spinal cord injury." On March 18, 2006, plaintiff was visited by her son-in-law, a physician, who performed a neurological examination and ordered that plaintiff be rushed to a hospital for emergency evaluation of a potential spinal cord injury. At the hospital, plaintiff "was diagnosed with compression fractures of her thoracic spine . . . [as well as] a permanent spinal cord injury resulting in paraplegia and loss of bladder and bowel function."

Plaintiff commenced this action asserting a cause of action for medical malpractice. Specifically, plaintiff alleged that defendants failed "to properly perform straight catheterization as ordered by the nursing staff . . . [, which] was a departure from the standard of care for a reasonably prudent nurse or nursing home . . . [and] resulted in plaintiff slipping and falling and suffering an injury to her back." Plaintiff further alleged that "[t]he failure of defendants to diagnose and treat [her] compression fractures and . . . to provide spinal precautions after her first fall was a departure from the [relevant] standard of care . . . and resulted in her permanent spinal cord injury."

Five months after commencing this action, plaintiff moved for leave to amend the complaint by adding a cause of action against the Jewish Home pursuant to Public Health Law § 2801-d. Supreme Court denied the motion, relying on two of this Court's prior decisions.

## Public Health Law § 2801-d

The majority sets forth the relevant provisions of Public Health Law § 2801-d. Section 2801-d (2) allows for compensatory damages in an amount no "less than [25%] of the daily per-patient rate of payment established for the residential health care facility." As noted by the majority, a plaintiff may also recover punitive damages and attorneys' fees for a cause of action pursuant to section 2801-d (see § 2801-d [2], [6]), and any damages recovered by a plaintiff "shall be exempt for purposes of determining initial or continuing eligibility for [Medicaid]" (§ 2801-d [5]).

Public Health Law § 2803-c sets forth various rights of patients in nursing homes, any violation of which could support a section 2801-d cause of action against the facility. Included in those rights is "the right to receive adequate and appropriate medical care" (§ 2803-c [3] [e]), which plaintiff relies upon to support her section 2801-d cause of action. Plaintiff also relies on alleged violations of the regulations governing nursing homes

(*see e.g.* 10 NYCRR 415.12 [h] [2] ["The facility shall ensure that . . . each resident receives adequate supervision and assistive devices to prevent accidents"]).

## Precedent

We first examined Public Health Law § 2801-d in *Goldberg v Plaza Nursing Home Comp.* (222 AD2d 1082 [1995]). In that case, the plaintiff alleged that the defendant nursing home's employees ignored the calls of her mother, the decedent, to release her from a restraint vest that she wore, and the decedent became agitated and was either strangled by the vest or suffered cardiac arrest (*see id.* at 1083). We concluded that Supreme Court should have granted the defendant's motion for summary judgment dismissing the section 2801-d cause of action (*see id.* at 1083-1084). Relying on the legislative history of the statute, as well as *Begandy v Richardson* (134 Misc 2d 357, 360-361 [1987]), we concluded that the purpose of section 2801-d "was not to create a new personal injury cause of action based on negligence when that remedy already existed" (*Goldberg*, 222 AD2d at 1084). We noted that the plaintiff had the right to bring a wrongful death action predicated upon the defendant's negligence and that to allow the section 2801-d cause of action to stand "would authorize a cause of action under that section for every case based upon negligence and implicating a residential health care facility" (*id.*).

We examined Public Health Law § 2801-d again in *Doe v Westfall Health Care Ctr.* (303 AD2d 102, 104 [2002]), a case in which the decedent was placed in a nursing home after she sustained a head injury in an automobile accident, leaving her in a chronic vegetative state. The decedent was raped by a male health aide at the facility and became pregnant, ultimately giving birth to a baby boy before dying the following year (*see id.* at 104). The plaintiff, decedent's mother, asserted causes of action for, inter alia, negligence and a violation of section 2801-d (*see id.*). We reexamined *Goldberg* and concluded "that the clear intent of section 2801-d was to expand the existing remedies for conduct that, although constituting grievous and actionable violations of important rights, did not give rise to damages of sufficient monetary value to justify litigation" (*id.* at 109). We further concluded that the complained-of conduct in *Doe* "is precisely the sort of conduct that [section 2801-d] was designed to target, but recovery for such conduct is often barred for plaintiffs who sue at common law" (*id.* at 110). In that case, a negligence

cause of action against the facility would have been difficult to establish "because of the [probable] absence of the requisite element of foreseeability, i.e., the facility's lack of prior knowledge of the [health aide's] criminal tendencies" (*id.* at 110). We concluded that

> "the Legislature could not have intended that [the] plaintiff be prevented from asserting a cause of action under [section 2801-d] merely because her simultaneously asserted common-law causes of action survived a motion to dismiss where, as here, those common[-]law causes of action ultimately may not survive a motion for summary judgment" (*id.* at 112).

We therefore overruled our decision in *Goldberg* to the extent that "we determined therein that summary judgment dismissing the [section 2801-d] cause of action was appropriate despite doubt concerning the efficacy of the remaining common-law cause of action" (*id.*).

We also note that the First and Third Departments have allowed a Public Health Law § 2801-d cause of action to stand even when the plaintiff alleges a common-law cause of action (*see Leclaire v Fort Hudson Nursing Home, Inc.*, 52 AD3d 1101, 1102 [2008]; *Ward v Eastchester Health Care Ctr., LLC*, 34 AD3d 247 [2006]; *Fleming v Barnwell Nursing Home & Health Facilities*, 309 AD2d 1132, 1132-1133 [2003]; *Zeides v Hebrew Home for Aged at Riverdale*, 300 AD2d 178, 178-179 [2002]). Those cases, however, do not discuss the legislative history of the statute or analyze whether such a cause of action is proper when the plaintiff could successfully recover under a common-law cause of action.

## Analysis

The majority relies on the purportedly clear language of the statute and concludes that plaintiff is not precluded from asserting a cause of action under Public Health Law § 2801-d inasmuch as the remedies provided for in that section "are in addition to and cumulative with any other remedies available to a patient, at law or in equity or by administrative proceedings" (§ 2801-d [4]). The majority further concludes that our prior decisions should not be followed because they were unsound and contrary to reason. We disagree.

The doctrine of stare decisis "recognizes that legal questions, once resolved, should not be reexamined every time they are

presented" (*Dufel v Green*, 198 AD2d 640, 640 [1993], *affd* 84 NY2d 795 [1995]). " 'The doctrine . . . rests upon the principle that a court is an institution, not merely a collection of individuals, and that governing rules of law do not change merely because the personnel of the court changes' " (*People v Taylor*, 9 NY3d 129, 148 [2007]). Stare decisis " 'is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process' " (*id.*; *see People v Damiano*, 87 NY2d 477, 488-489 [1996, Simons, J., concurring]; *Baden v Staples*, 45 NY2d 889, 892 [1978]). We have examined the issue raised on this appeal not once, but twice. Certainly the learned jurists on this Court in the prior decisions were aware of the language of Public Health Law § 2801-d relied upon by the majority. The only changes to the body of law concerning that issue since our decision in *Doe* are the decisions of the First and Third Departments that, as noted above, did not provide any analysis with respect to whether a section 2801-d cause of action is appropriate when the plaintiff has a viable common-law cause of action. The lower court in this case explicitly relied on our decisions in *Goldberg* and *Doe* in denying the motion. We cannot agree with the majority's conclusion that our prior decisions should be so easily cast aside.

In our opinion, there are no compelling reasons "to overcome the sound demands of stare decisis" (*Hartford Ins. Co. of Midwest v Halt*, 223 AD2d 204, 212 [1996], *lv denied* 89 NY2d 813 [1997]). The language of Public Health Law § 2801-d (4) makes it clear that a plaintiff is not *limited* to a cause of action pursuant to that section when he or she has other viable causes of action, such as one for negligence. In other words, a plaintiff may decide to assert a section 2801-d cause of action rather than one for negligence or medical malpractice. As we noted in *Doe*, the purpose of section 2801-d "was to expand the existing remedies for conduct that, although constituting grievous and actionable violations of important rights, did not give rise to damages of sufficient monetary value to justify litigation" (303 AD2d at 109). The Memorandum of the State Executive Department stated that the purpose of the statute was

> "[t]o provide patients in nursing homes, including facilities providing health-related services, with increased powers to enforce their rights to adequate treatment and care by providing them with a private

right of action to sue for damages and other relief and enabling them to bring such suits as class actions" (Mem of State Exec Dept, 1975 McKinney's Session Laws of NY, at 1685).

The Governor's Memorandum similarly stated that the statute would create "a patient's right of action against a facility [that] fails to meet required standards of care" (Governor's Mem approving L 1975, chs 648-660, 1975 McKinney's Session Laws of NY, at 1764). The State Executive Department further explained that the statute would increase the protection of nursing home patients by creating incentives to encourage private parties to help to protect their rights (see Mem of State Exec Dept, at 1685-1686). For example, the statute allows for class actions and fixes the minimum amount of damages, thus enabling the potential recovery to be large enough to encourage the private bar to commence actions on behalf of nursing home patients (see id. at 1686). In addition, the statute permits the award of attorneys' fees, which further encourages such representation (see id.).

In this case, rather than initially asserting a cause of action under Public Health Law § 2801-d, plaintiff elected to recover damages by asserting a cause of action for medical malpractice. Plaintiff admits that she is now seeking damages under section 2801-d to ensure that she could "recover compensation for her injuries while retaining Medicaid eligibility to pay for her ongoing care," and "to keep at least a portion of her recovery safe from Medicaid recoupment." As we concluded in Goldberg and Doe and as the legislative history of section 2801-d demonstrates, however, that section was not meant to supplement every case asserting a common-law cause of action against a residential health care facility. The Legislature did not intend to allow a plaintiff to assert a section 2801-d cause of action in addition to common-law causes of action simply to allow the plaintiff to retain Medicaid eligibility or to render exempt from Medicaid recoupment any damages recovered by the plaintiff.

We conclude, as we did in Doe, that a Public Health Law § 2801-d cause of action should be limited to those cases in which recovery under a common-law cause of action would prove difficult or inadequate. Simply alleging a violation of a right enumerated in section 2803-c is not enough to allow a section 2801-d cause of action to stand. The provisions of section 2803-c, including the provision that a patient "shall have the right to receive adequate and appropriate medical care" (§ 2803-c [3] [e]), would encompass most negligence actions brought against

a residential health care facility. In determining whether a section 2801-d cause of action is appropriate in a case where a residential health care facility allegedly deprived the plaintiff of some right or benefit, a court must examine the facts to determine the likelihood of success under the common-law causes of action asserted. In some cases, that determination cannot be made at the pleadings stage, in which event a motion for leave to amend the complaint to assert a cause of action under section 2801-d should be granted. Here, however, it is clear from the factual allegations of the complaint that this is a straightforward medical malpractice case against the facility, rather than a case envisioned by the Legislature as appropriate for a section 2801-d cause of action. This is not a case where an attorney would need the financial incentives of section 2801-d (2) and (6) in order to represent plaintiff. "There is no difficulty with the plaintiff['s] proof or any bar to recovery, if negligence is found, under standard common-law principles, nor any problem of damages" (*Bielewicz v Maplewood Nursing Home, Inc.*, 4 Misc 3d 475, 479 [2004]).

Accordingly, we would affirm the order.

FAHEY and GORSKI, JJ., concur with PINE, J.; SCUDDER, P.J., and CENTRA, J., dissent and vote to affirm in a separate opinion by CENTRA, J.

It is hereby ordered that the order so appealed from is reversed, on the law, without costs, and the motion is granted upon condition that plaintiff shall serve the proposed amended complaint within 20 days of service of the order of this Court with notice of entry.