# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**568**

**CA 14-01849**

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

NANCY BURKHART, SISTER AND LEGAL GUARDIAN FOR
BRIAN BURKHART, PLAINTIFF-RESPONDENT,

V                                                  MEMORANDUM AND ORDER

PEOPLE, INC., ELISA SMITH, KATELYNNE COLEMAN,
AMY MAZURKIEWICZ, DEFENDANTS-APPELLANTS,
ET AL., DEFENDANTS.

---

DAMON MOREY LLP, BUFFALO (AMY ARCHER FLAHERTY OF COUNSEL), FOR
DEFENDANTS-APPELLANTS.

CONNORS & VILARDO, LLP, BUFFALO (JOSEPH D. MORATH, JR., OF COUNSEL),
AND CLAUDE A. JOERG, LOCKPORT, FOR PLAINTIFF-RESPONDENT.

PAUL R. KIETZMAN, DELMAR, FOR NYSARC, INC., AMICUS CURIAE.

-----------------------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Niagara County
(Catherine R. Nugent Panepinto, J.), entered February 18, 2014. The
order denied the motion of defendants People, Inc., Elisa Smith,
Katelynne Coleman and Amy Mazurkiewicz for summary judgment dismissing
the seventh, eighth, ninth and fourteenth causes of action.

It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs, the motion is granted,
and plaintiff's 7th, 8th, 9th, and 14th causes of action are dismissed.

Memorandum: Plaintiff commenced this action on behalf of her
brother, Brian Burkhart (Brian), a developmentally disabled individual
residing in a group home owned and operated by People, Inc.
(defendant). The complaint alleges two instances of negligence
involving defendant. The first instance relates to the allegedly
inadequate response of defendant's employees, defendants Elisa Smith
and Amy Mazurkiewicz, to seizures suffered by Brian on January 12,
2008. The second instance relates to an incident on January 17, 2008
in which Brian, on an outing at a local movie theater under the
supervision of defendant's employee, defendant Katelynne Coleman, was
allowed to wander from the theater and onto a busy nearby roadway,
where he was struck by a vehicle driven by defendant Lucian Visone and
owned by defendant Lakefront Construction, Inc. Brian allegedly
suffered serious injuries as a result of that accident.

The complaint asserts causes of action based on, inter alia,
defendant's alleged violation of Public Health Law § 2801-d, which

allows a patient of a "residential health care facility" to maintain a private action against the facility when the facility deprives him or her of "any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any applicable federal statute, code, rule or regulation" (§ 2801-d [1]). Defendant and its employee defendants moved for summary judgment dismissing the causes of action based on section 2801-d, contending that the statute does not apply to group homes such as the one operated by defendant. Supreme Court denied the motion, holding that, because the group home provides some "health-related service" to its residents, it qualifies as a "residential health care facility" to which the statute applies. We now reverse.

Pursuant to Public Health Law § 2801 (3), a " '[r]esidential health care facility' means a nursing home or a facility providing health-related service." The parties agree that the group home operated by defendant does not qualify as a nursing home. Rather, the issue on appeal is whether the group home is a residential health care facility because it provides "health-related service," which is defined as "service in a facility or facilities which provide or offer lodging, board and *physical care* including, but not limited to, the recording of health information, dietary supervision and supervised hygienic services incident to such service" (§ 2801 [4] [b] [emphasis added]). We conclude that defendant's group home is not a residential health care facility.

Although the group home provides some "physical care" to its residents in addition to lodging and board, as plaintiff points out, it does not necessarily follow that it provides a "health-related service" and is therefore a residential health care facility under Public Health Law § 2801-d. We note that Public Health Law article 28 applies to institutions "serving *principally* as facilities . . . for the rendering of health-related service" (§ 2800 [emphasis added]), and the provisions of the article relate specifically to hospitals and nursing homes, institutions that clearly serve *principally* as facilities for the provision of health-related service (*see* §§ 2801-2826). Indeed, section 2801-d (2) awards compensation to plaintiffs for violations of the statute based in part on the daily per-patient rate established in section 2807, which pertains to "hospital reimbursement" for "hospital service and health-related service."

In addition, plaintiff premises the alleged violation of Public Health Law § 2801-d in part on alleged violations of 10 NYCRR 415.11 and 415.12, regulations that relate to the minimum standards applicable to nursing homes and that deal specifically with assessment and care planning (*see* 10 NYCRR 415.11), and quality of care (*see* 10 NYCRR 415.12), for nursing home residents. In fact, 10 NYCRR part 415 uses the term "[n]ursing home" interchangeably with the term "residential health care facility" (10 NYCRR 415.2 [k]).

The legislative history of the statute reinforces our conclusion that the term "residential health care facility" is meant to apply to nursing homes and similar facilities that are governed by the Public

Health Law.  Section 2801-d was enacted "to redress the abuse of patients in nursing homes" (*Doe v Westfall Health Care Ctr.*, 303 AD2d 102, 112), and "the term 'residential health care facility' was intentionally used by the Legislature in an effort to curb abuses in the nursing home industry and provide a more flexible penalty system against nursing homes than was previously available" (*Town of Massena v Whalen*, 72 AD2d 838, 839).  We therefore conclude that the cause of action provided by section 2801-d was intended to apply to nursing homes, and other facilities such as assisted living facilities, operated by entities in the "nursing home industry."

In contrast to a hospital or nursing home, the group home owned and operated by defendant is governed by the Mental Hygiene Law and regulated by the Office for People with Developmental Disabilities (OPWDD), and operates pursuant to a certificate issued by the Commissioner of OPWDD (*see* Mental Hygiene Law article 16; 14 NYCRR part 686; *see also* Mental Hygiene Law § 13.07).  The group home is classified as an "individualized residential alternative" community residence, defined as "a facility providing room, board, and individualized protective oversight" for "persons who are developmentally disabled and who, in addition to these basic requirements, need supportive interpersonal relationships, supervision, and training assistance in the activities of daily living" (14 NYCRR 686.99 [l] [2] [iii]).  Under the plain language of the regulations governing it, the group home does not serve "principally" as a facility "for the rendering of health-related service" governed by Public Health Law article 28 (§ 2800).

Thus, notwithstanding that the group home may provide some "physical care" to residents such as Brian incident to its provision of "individualized protective oversight," we conclude that the group home is not a "residential health care facility" subject to the private right of action available under Public Health Law § 2801-d, and the court therefore erred in denying the motion for summary judgment dismissing plaintiff's causes of action based on that statute.

Entered:  June 12, 2015                          Frances E. Cafarell
                                                 Clerk of the Court