# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1600**
**CA 10-01608**
PRESENT: CENTRA, J.P., PERADOTTO, CARNI, AND SCONIERS, JJ.

---

VINCENT B. BETETTE, JR., INDIVIDUALLY AND AS
ADMINISTRATOR OF THE ESTATE OF VINCENT B.
BETETTE, SR., DECEASED, PLAINTIFF-RESPONDENT,

                    V                              MEMORANDUM AND ORDER

COUNTY OF MONROE AND MONROE COMMUNITY HOSPITAL,
DEFENDANTS-APPELLANTS.

---

WILLIAM K. TAYLOR, COUNTY ATTORNEY, ROCHESTER (JAMES L. GELORMINI OF
COUNSEL), FOR DEFENDANTS-APPELLANTS.

WOODS OVIATT GILMAN LLP, ROCHESTER (CHRISTIAN N. VALENTINO OF
COUNSEL), FOR PLAINTIFF-RESPONDENT.

---------------------------------------------------------------------------------------------------

     Appeal from an order of the Supreme Court, Monroe County (John J.
Ark, J.), entered April 8, 2010 in an action for, inter alia, wrongful
death.  The order granted the motion and cross motion of plaintiff for
leave to amend the complaint and denied the motion of defendants for
summary judgment.

     It is hereby ORDERED that the order so appealed from is modified
on the law by granting those parts of defendants' motion seeking to
dismiss the complaint insofar as it asserts the failure to provide
defendants' employees with proper training and the failure to warn
plaintiff's decedent of the allegedly dangerous condition of the door
handle and as modified the order is affirmed without costs.

     Memorandum:  Plaintiff, individually and as administrator of
decedent's estate, commenced this action seeking damages for, inter
alia, the conscious pain and suffering and wrongful death of decedent,
who died while he was a resident of defendant Monroe Community
Hospital (MCH), a skilled nursing facility.  Decedent had been
discharged to the care of the facility upon leaving a hospital where
he had been treated after he had fallen in his home.  Decedent had
previously been a patient of MCH a month earlier, again after being
discharged from a hospital after having fallen at his home.  During
his first stay at MCH, decedent fell on two occasions and, during his
instant discharge there, MCH had installed bed and chair alarms to
alert staff in the event that decedent attempted to ambulate without
assistance, but it is undisputed that bed rails were not used.  On the
day of the accident, plaintiff alleged that decedent activated the
call button to obtain assistance in getting to the bathroom.  When the
call went unanswered, decedent left his bed in an effort to get to the

bathroom, whereupon the alarm sounded.  Decedent fell upon leaving his bed, however, and he required 130 stitches to repair the laceration that he sustained when he impaled his arm on the door handle. Decedent died two days later of congestive heart failure, and the death certificate noted that the laceration was a "significant condition[] contributing to death but not related to cause given in Part 1 (a)," i.e., congestive heart failure.

Plaintiff served a timely notice of claim asserting negligence claims, and the summons and complaint alleged two causes of action for negligence, seeking damages for wrongful death and conscious pain and suffering.  Plaintiff alleged that defendants were negligent in, inter alia, failing to supervise decedent, failing to use bed rails to prevent decedent from getting out of bed, failing to provide MCH staff with proper training, failing to install the door handle so that it would not constitute a dangerous condition, and failing to warn decedent of that dangerous condition.

Plaintiff thereafter moved for leave to amend the complaint to add a cause of action under Public Health Law § 2801-d, while defendants moved for summary judgment dismissing the complaint arguing, inter alia, that some of plaintiff's claims sounded in medical malpractice rather than negligence.  Plaintiff then cross-moved for leave to amend the complaint to add a cause of action for medical malpractice and for an extension of time to file and serve the requisite certificate of merit and notice of medical malpractice. Supreme Court granted plaintiff's motion and cross motion and denied defendants' motion.

We note at the outset that, in opposition to defendants' motion, plaintiff abandoned his claims alleging the failure to provide proper training for MCH employees and the failure to warn of an allegedly dangerous condition (*see Ciesinski v Town of Aurora*, 202 AD2d 984). We thus conclude that the court erred in denying defendants' motion with respect to those claims, and we therefore modify the order accordingly.

We reject defendants' contention that the court erred in granting the motion of plaintiff seeking leave to amend the complaint to add a cause of action under Public Health Law § 2801-d.  It is well settled that "[l]eave to amend the pleadings 'shall be freely given' absent prejudice or surprise resulting directly from the delay" (*McCaskey, Davies & Assoc. v New York City Health & Hosps. Corp.*, 59 NY2d 755, 757; *see Carro v Lyons Falls Pulp & Paper, Inc.*, 56 AD3d 1276, 1277). Defendants contend, however, that the court erred in allowing amendment of the complaint to add the Public Health Law § 2801-d cause of action because that cause of action was not included in the notice of claim.  We conclude under the circumstances of this case that the notice of claim may be corrected pursuant to General Municipal Law § 50-e (6) to include that new cause of action.  Pursuant to section 50-e (6), a court in its discretion may permit the correction of a notice of claim where there has been a "mistake, omission, irregularity or defect made in good faith . . . ., provided it shall appear that the other party was not prejudiced thereby."  Here, plaintiff asserted a

good faith basis for his initial failure to include the Public Health Law § 2801-d cause of action in the notice of claim. He contended that he did not include that cause of action because, prior to our decision in *Kash v Jewish Home & Infirmary of Rochester N.Y., Inc.* (61 AD3d 146), we did not allow a plaintiff to assert both a cause of action for wrongful death and a cause of action under section 2801-d. While defendants are correct that General Municipal Law § 50-e (6) ordinarily "is not applicable in an attempt to state a new theory of recovery" (*Hines v City of Buffalo*, 79 AD2d 218, 226), there are exceptions to that general rule. For example, courts have granted leave to serve a supplemental or amended notice of claim to add a derivative cause of action for loss of consortium (*see Lopes v Metropolitan Tr. Auth.*, 66 AD3d 744, 745; *Sciolto v New York City Tr. Auth.*, 288 AD2d 144), and a claim for wrongful death where such claim "results from the same facts as were alleged in a timely and otherwise admittedly valid notice of claim for personal injuries" (*Ramos v New York City Tr. Auth.*, 60 AD3d 517, 519; *see Matter of Scheel v City of Syracuse*, 97 AD2d 978). Likewise, the corrected notice of claim in this case results from the same timely alleged facts. The determinative factors are whether the plaintiff has shown a good faith basis for the correction and an absence of prejudice to the defendants, and plaintiff has made that showing here.

We reject defendants' further contention that the court erred in denying that part of their motion with respect to the premises liability claim. The door handle at issue was installed with the handle facing up rather than facing down or horizontally, and plaintiff alleged that the upward-facing door handle constituted a dangerous condition. Assuming, arguendo, that defendants met their initial burden of establishing that the door handle did not constitute a dangerous condition, we conclude that plaintiff raised a triable issue of fact with respect thereto by submitting the affidavit of his expert, a registered architect and professional engineer (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562). The expert had experience in building and renovation projects and was in fact familiar with the design and installation of the type of door handle at issue. In his view, that type of door handle was more dangerous than others because of its thin and open-ended handle, which was more likely to cause injury to someone than other door handles that are more blunt, rounded, or closed-ended. According to plaintiff's expert, the decision on how to install a door handle should be made only after considering the type of facility, the location of the door handle within that facility, and the individuals who will be using the door handle. He opined that the upward-facing door handle was a dangerous condition under the circumstances, where the facility treated elderly patients who had difficulty with ambulation and balance.

Although we agree with defendants that plaintiff's claims sound in both negligence and medical malpractice (*see Smee v Sisters of Charity Hosp. of Buffalo*, 210 AD2d 966, 967; *see generally Bleiler v Bodnar*, 65 NY2d 65, 72-73), we reject defendants' contention that the court erred in granting plaintiff's cross motion for leave to file and serve a late certificate of merit (*see CPLR 3012-a*) and a notice of

medical malpractice action (*see* CPLR 3406 [a]).  A court in its discretion may extend a plaintiff's time to file and serve those items "upon such terms as may be just and upon good cause shown" (CPLR 2004; *see Tewari v Tsoutsouras*, 75 NY2d 1, 11-12; *Dye v Leve*, 181 AD2d 89). We agree with plaintiff that he has shown good cause for the delay (*see generally Rice v Vandenebossche*, 185 AD2d 336).  We have considered defendants' remaining contention and conclude that it is without merit.

All concur except PERADOTTO, J., who dissents in part and votes to modify in accordance with the following Memorandum:  I respectfully dissent in part.  In my view, Supreme Court erred in granting plaintiff's motion for leave to amend the complaint to add a cause of action under Public Health Law § 2801-d and also erred in denying that part of defendants' motion for summary judgment seeking dismissal of the premises liability claim.  I would therefore further modify the order accordingly.

As set forth by the majority, plaintiff's decedent was a resident of defendant Monroe Community Hospital (MCH), a skilled nursing facility, at the time of his death.  When no one responded to his call to obtain assistance in getting to the bathroom, decedent got out of bed and, in attempting to walk to the bathroom unassisted, he fell onto the door handle to his room, piercing his right arm.  Decedent died two days later of congestive heart failure.  The death certificate listed the "[s]uperficial laceration of [his] right forearm" as a "significant condition[] contributing to [his] death." Plaintiff served a timely notice of claim dated June 27, 2005, asserting claims of negligence, and thereafter commenced this action in February 2006.  The complaint asserted two causes of action for negligence and sought damages for wrongful death and decedent's conscious pain and suffering.  Plaintiff alleged that defendants were negligent in, inter alia, failing to "provide one-on-one supervision" for decedent, failing to respond in a prompt manner to decedent's request for assistance, and "fail[ing] to install or cause to install the door handle[] in a down-facing position so that [it] would not create a dangerous condition."

In September 2009, plaintiff moved for leave to amend the complaint to include a cause of action under Public Health Law § 2801-d.  Defendants then moved for summary judgment dismissing the complaint contending, inter alia, that the premises liability claim was without merit inasmuch as the door handle at issue was not inherently dangerous and, indeed, was a "standard health care facility fixture."

I agree with defendants that the court erred in granting plaintiff's motion for leave to amend the complaint.  The majority concludes that, under the circumstances of this case, "the notice of claim may be corrected pursuant to General Municipal Law § 50-e (6) to include that new cause of action" under Public Health Law § 2801-d. Notably, plaintiff did not seek leave to serve a late notice of claim under General Municipal Law § 50-e (5), nor did he seek to "correct[]" the notice of claim pursuant to General Municipal Law § 50-e (6),

which applies to a "mistake, omission, irregularity or defect made in good faith in the notice of claim."  Indeed, General Municipal Law § 50-e (6) was raised for the first time by defendants in opposition to plaintiff's motion for leave to amend the complaint and, in reply, plaintiff asserted only that no notice of claim was required with respect to the proposed Public Health Law § 2801-d cause of action. Plaintiff continues to make that same assertion on appeal.

In any event, even assuming, arguendo, that plaintiff sought relief under General Municipal Law § 50-e (6), I conclude that such relief is unavailable here.  It is well established that "[a]mendments of a substantive nature are not within the purview of General Municipal Law § 50-e (6)" (*Herron v City of New York*, 223 AD2d 676). Rather, General Municipal Law § 50-e "merely authorizes the correction of good faith, nonprejudicial, technical defects or omissions, not substantive changes in the theory of liability" (*Scott v City of New York*, 40 AD3d 408, 410; *see Herron*, 223 AD2d 676; *Hines v City of Buffalo*, 79 AD2d 218, 226).  Here, the proposed amendment to the complaint does not correct a "mistake, omission, irregularity or defect" in the notice of claim (General Municipal Law § 50-e [6]). Instead, the proposed cause of action predicated upon Public Health Law § 2801-d, seeking attorneys' fees pursuant to Public Health Law § 2801-d (6) and punitive damages based on the alleged willful deprivation and reckless disregard of decedent's rights, "constituted a new and separate time-barred claim against the defendants" (*Young v A. Holly Patterson Geriatric Ctr.*, 17 AD3d 667, 667; *see* § 50-e [5]). Although the majority states that the "corrected" notice of claim "results from the same timely alleged facts," in my view the assertion of a new cause of action, including a new theory of liability for punitive damages, is sufficient to remove the proposed amendment from the purview of General Municipal Law § 50-e (6) (*see White v New York City Hous. Auth.*, 288 AD2d 150; *Hines*, 79 AD2d at 226; *Colena v City of New York*, 68 AD2d 898, 900).

I further agree with defendants that the court erred in denying that part of their motion seeking summary judgment dismissing the premises liability claim.  The majority assumes, arguendo, that defendants met their initial burden, and then concludes that plaintiff raised a triable issue of fact in any event.  In my view, defendants met their initial burden of establishing that the door handle did not constitute an unreasonably dangerous condition, and plaintiff failed to raise a triable issue of fact (*see Palmer v Barnes & Noble Booksellers, Inc.*, 34 AD3d 1287, 1288).  Defendants submitted, inter alia, an affidavit of MCH's director of facilities service (hereafter, director) whose duties include "supervising the engineering and non-medical operational requirements" for the facility.  In his affidavit, the director explained that the "push-pull" handles on the door of decedent's room at MCH are a "standard type design for handles that are commonly used in health care facilities."  Indeed, he averred that such "push-pull" handles are "specifically designed to be used in health care institutions on patient doors . . . [and] are specifically marketed to hospitals and health care institutions as 'Hospital Push/Pulls.' "  On the date of the incident, the handles of the door to decedent's room were mounted with one handle facing upward and the

other handle facing downward, which the director described as "a typical installation as authorized by the manufacturer and as commonly installed in health care institutions." The director noted that, when decedent's door was closed, the "up handle" faced the hallway while the "down handle" faced the interior of decedent's room. The director further averred that he was unaware of any prior injuries resulting from an upward facing door handle in his more than 10 years of experience in the field, and that in his opinion "an upward facing door handle such as was present in this case was not a dangerous condition."

In addition, defendants submitted the manufacturer's installation instructions for the door handle at issue, which state that there are six mounting positions for the door handle, including the one handle up/one handle down position utilized in decedent's room. Indeed, the installation template provided by the manufacturer depicts an upward facing pull handle and a downward facing push handle. Defendants also submitted marketing materials for hospital push/pull handles, which indicate that "[h]andles can be mounted up, down, horizontal or any combination" thereof.

As noted, I disagree with the majority that plaintiff raised a triable issue of fact in opposition to the motion (*see generally Zuckerman v City of New* York, 49 NY2d 557, 562). Plaintiff submitted an affidavit of his expert, a registered architect and professional engineer, who averred that he was familiar with the design and installation of the type of door handle at issue. Plaintiff's expert opined that the door handle at issue is more dangerous than other types of door handles because of its "thin" handle and "dagger-like tip," which are more likely to cause injury than "other types of door handles or door knobs, which are more blunt, rounded, and/or closed-ended." The expert's repeated descriptions of the door handle as "dagger-like," however, are belied by the photograph attached to his affidavit and other photographs of push/pull handles contained in the record. Those photographs in fact depict a rounded, blunt handle. Plaintiff's expert further asserted that "[t]he installation and maintenance of the door handle at MCH in an upward facing position was not in accordance with good and accepted custom, practices and standards with respect to the design and maintenance of a long term care facility." However, plaintiff's expert failed to " 'identify any specific industry standard upon which he relied in regard to the [door handle], nor did [he] supply any specific statutory or building code violations' " (*Palmer*, 34 AD3d at 1288; *see Bax v Allstate Health Care, Inc.*, 26 AD3d 861, 864). "The affidavit 'was thus speculative and not sufficiently probative to defeat [that part of] defendant[s'] motion for summary judgment' " (*Palmer*, 34 AD3d at 1288; *see Bax*, 26 AD3d at 864). The mere fact that MCH *could* have installed the door handle at issue with both handles facing downward does not warrant the conclusion that it *should* have done so or that the failure to do so created an unreasonably dangerous condition.

Entered:  March 25, 2011                        Patricia L. Morgan
                                                Clerk of the Court